**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **BRETT STEVEN HANSEL** | § | |
| | § | |
| **v.** | § | **No. 4:25-CV-00504-RWS-JBB** |
| | § | |
| **SHILA HEMBY, ET AL.** | § | |

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND ORDER[1]

Before the Court are the following pending motions: (1) Defendant Whitney Spraggins' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. No. 50); (2) Plaintiff's responsive Motion Requesting ADR (Dkt. No. 51-2); (3) Plaintiff's Motion to Strike – Requested Redactions in W. Spraggins' Motion to Dismiss (Dkt. No. 55); (4) Defendant Kristen Hansel's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Dkt. No. 59); (5) Defendants Department of Family and Protective Services, Green, Harris,[2] and Hemby's Motion to Dismiss (Dkt. No. 60); (6) Plaintiff's motions for leave to file amended complaint (Dkt. Nos. 72, 79); and (7) Defendants' Motion to Strike Plaintiff's Second Amended Complaint (Dkt. No. 89).

This dispute arises in the context of custody proceedings between Plaintiff and his former spouse, K. Hansel. Relevant here, Plaintiff alleges K. Hansel, a former child protective services case worker employed by DFPS, acted individually and under "previous color of law" of DFPS between 2020 and the end of the DFPS investigation in November 2024, and in conspiracy with

[1] The above case was referred to the undersigned United States Magistrate Judge for pretrial purposes in accordance with 28 U.S.C. § 636.

[2] On July 30, 2025, the Court granted Plaintiff's Motion for Voluntary Dismissal Without Prejudice as to Defendant Tina Harris. Dkt. No. 81. The claims against Harris have been dismissed without prejudice, and Harris has been terminated as a party to the above case. *Id.*

DFPS employees Green and Hemby and his sons' pediatrician Spraggins, to make false reports of abuse to DFPS and give false testimony in judicial hearings in violation of his constitutional parental rights. In response to another defendant's motion to dismiss Plaintiff's original complaint, Plaintiff has filed an amended complaint. Plaintiff has since proposed a second amended complaint with additional allegations and referenced even more possible allegations in his responsive briefing. However, as explained below, Plaintiff's allegations, regardless of the source, are barred on immunity grounds and/or fail to state a claim. Given Plaintiff has attempted to salvage his claims multiple times, any further proposed amendment would be futile, and his claims should be dismissed.

Having carefully reviewed all of the relevant briefing, the undersigned first recommends DFPS Defendants' Rule 12(b)(1) motion to dismiss (Dkt. No. 60) be **GRANTED**. Plaintiff's constitutional claims against DFPS and Green and Hemby in their official capacities are jurisdictionally barred by Eleventh Amendment immunity and should be **DISMISSED WITHOUT PREJUDICE**. Plaintiff's request for leave to amend to assert claims for injunctive relief against Green and Hemby in their official capacities should be denied as futile because those claims would be barred by Eleventh Amendment immunity and the *Younger* abstention doctrine. Plaintiff's request for leave to amend to assert claims for monetary damages against Green and Hemby in their individual capacities should be denied as futile because any proposed alleged constitutional violations lodged against Green and Hemby in their individual capacities would be dismissed based on qualified immunity.

The undersigned further recommends K. Hansel's motion to dismiss (Dkt. No. 59) be **GRANTED IN PART and DENIED IN PART**. To the extent Plaintiff sues K. Hansel for actions taken in her official capacity as an employee of DFPS, such claims should be dismissed without

prejudice under Rule 12(b)(1); any remaining official capacity claims against K. Hansel for actions taken outside her official capacity as an employee of DFPS should be dismissed with prejudice under Rule 12(b)(6) for failure to allege the essential elements for municipal liability under § 1983. Plaintiff's claims against K. Hansel in her individual capacity should not be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1); rather, they should be **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) as time-barred and/or for failure to state a claim. K. Hansel's request for attorney's fees and costs should be denied.

Finally, the undersigned recommends Spraggins' motion to dismiss (Dkt. No. 50) be **GRANTED IN PART and DENIED IN PART**. To the extent Plaintiff's claims are based upon Spraggins' witness testimony at the December 2024 and May 2025 court hearings related to the underlying custody matter, Spraggins is entitled to absolute witness immunity against those § 1983 claims, and those claims should be **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1). Plaintiff's remaining §§ 1983, 1985(3), and 1986 conspiracy claims against Spraggins for her out-of-court actions should be **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) as time-barred and/or for failure to state a claim. Spraggins' request for attorney's fees and costs should be denied.

Plaintiff's responsive motion for ADR (Dkt. No. 51-2) is **DENIED**, and Plaintiff's motion to redact aspects of Spraggins' motion to dismiss (Dkt. No. 55) is **GRANTED**. Finally, Plaintiff's motions for leave to file amended complaint (Dkt. Nos. 72, 79) are **DENIED**, and Defendants' Motion to Strike Plaintiff's Second Amended Complaint (Dkt. No. 89) is **DENIED AS MOOT**.

I. BACKGROUND……………………………………………………………………………..6

II. LEGAL STANDARDS……………..........................................................................................9

III. 42 U.S.C. § 1983 ........................................................................................................... 11

IV. DFPS DEFENDANTS' MOTION……………………………………………………..13

A. Plaintiff's claims for monetary damages against DFPS and Green/Hemby in their official capacities are jurisdictionally barred by the Eleventh Amendment and should be dismissed without prejudice……………………………………………………………………………14

B. Plaintiff's proposed claims for injunctive relief against Green/Hemby in their official capacities would be barred by Eleventh Amendment immunity and the *Younger* abstention doctrine, making further amendment futile…………………………………………….....19

C. Plaintiff's proposed claims for monetary damages against Green/Hemby in their individual capacities would be barred by qualified immunity, making further amendment futile……………………………………………………………………………………22

1. Plaintiff's proposed claims…………………………………………………………….23

2. Applicable law…………………………………………………………………………26

3. Qualified immunity analysis…………………………………………………………..27

a. Fourth Amendment……………………………………………………………………28
b. Fourteenth Amendment substantive due process………………………………………29
c. Fourteenth Amendment procedural due process……………………………………….33
d. Fourteenth Amendment equal protection………………………………………………34
e. First Amendment…………………………………………………………………………36

4. Futility of amendment…………………………………………………………………37

V. K. HANSEL'S MOTION……....…………………………………………………………38

A. Plaintiff's proposed claims……………………………………………………………...38

B. K. Hansel's assertions and analysis…..…………………………………………….…...40

1. Any official capacity claims against K. Hansel should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6)……….……………….…………………………..……………42

2. Plaintiff's § 1983 claims against K. Hansel in her individual capacity should be dismissed pursuant to Rule 12(b)(6)………….……………………………………………..43

a. Plaintiff's claims for violations of his parental rights in 2020 and 2021 are time-barred……………………………………………………………………………43
b. Plaintiff fails to sufficiently allege K. Hansel was a state actor to support a plausible claim under § 1983 for violations of his parental rights in 2024……………………46

3. Plaintiff's remaining conspiracy claims under §§ 1985(3) and 1986 should be dismissed pursuant to Rule 12(b)(6)…………………….……………………………………..50

C. K. Hansel's request for attorney's fees and costs……………………………..………………51

VI. SPRAGGINS' MOTION…..…..……………………………………………………….53

A. Plaintiff's proposed claims…………………………………………………………...53

B. Spraggins' assertions…………………………………………………………………55

C. Spraggins is sued in her individual capacity and not in any official capacity………………...56

D. Plaintiff's claims pertaining to Spraggins' witness testimony should be dismissed under Rule 12(b)(1)………………………………………………………………………...57

E. Plaintiff's claims pertaining to Spraggins' out-of-court actions should be dismissed under Rule 12(b)(6) ………………………………………………………………………...61

1. Plaintiff's conspiracy claims for violations of his parental rights in 2020 are time-barred…………………………………………………………………………61

2. Plaintiff's conspiracy claims for violations of his parental rights in 2024-25 fail to state a claim…………………………………………………………….……………..62

a. Plaintiff fails to sufficiently allege Spraggins was a state actor to support a plausible claim under § 1983……………………………………………………………62
b. Plaintiff fails to sufficiently allege plausible claims under §§ 1985(3) and 1986……..65

F. Spraggins' request for attorney's fees and costs……………………………………..66

VII.RECOMMENDATION.………………….....……………………………………...66

## I. BACKGROUND

Plaintiff Brett Hansel, proceeding *pro se*, brings this action under 42 U.S.C. §§ 1983, 1985, and 1986, alleging that the defendants—both state actors and private individuals—engaged in a coordinated and ongoing pattern of unconstitutional conduct that violated his rights under the First, Fourth, and Fourteenth Amendments. According to Plaintiff, the alleged conduct includes misuse of child protective services processes, judicial deception in family court proceedings, retaliatory targeting for making a complaint about the defendants' actions, and unlawful denial of parental access without due process. Dkt. No. 48-2 at 2. Plaintiff asserts these actions caused ongoing harm and obstruction of his parental rights.

The current operative pleading is Plaintiff's form "Complaint for Violation of Civil Rights (Non-Prisoner Complaint)" (Dkt. No. 48), with the following attachments: (1) "Affidavit Stating Case Elements and Factual Basis" (Dkt. No. 48-1); (2) Plaintiff's Affidavit Detailing Civil Rights Violations, Damages, and Relief Sought (Dkt. No. 48-2); (3) Defendant List (Dkt. No. 48-3); and (4) "§ 1985. Conspiracy to interfere with civil rights" and "§ 1986. Action for neglect to prevent" (Dkt. No. 48-4) (together, First Amended Complaint ("FAC"), or "operative complaint"). *See* Dkt. No. 46. The amended complaint asserts claims against the Texas Department of Family and Protective Services ("DFPS"); DFPS employees Shila Hemby (official capacity) and Davietta Green (official capacity) (together with DFPS, "DFPS Defendants"); Plaintiff's ex-wife Kristen Hansel ("K. Hansel") (individual and official capacities); pediatrician Whitney Spraggins ("Spraggins"); and Krum ISD Middle School Principal Lindsey Boone ("Boone")[3] (collectively, "Defendants").

[3] Plaintiff alleges Boone used her official capacity as a principal of Krum ISD to violate Plaintiff's parental rights by revoking Plaintiff's access to school records and possibly by altering the football game time of Plaintiff's son. Dkt. No. 48-1 at 11. Boone filed a Motion to Dismiss Plaintiff's First Amended Complaint. Dkt. No. 57. On February 20,

The following facts are taken from Plaintiff's FAC, accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiff.

Between October 10, 2024 and December 11, 2024, the four "primary defendants [Green, Hemby, K. Hansel, and Spraggins] conspired to violate the civil rights of Plaintiff using family court, Texas DFPS, and law enforcement." Dkt. No. 48 at 4; *see also* Dkt. No. 48-1 at 2 (further alleging the conspiracy began in March 2020 and has continued to present day). K. Hansel, a former DFPS CPS case worker and supervisor, acted individually and under color of law of DFPS ("or by use of previous color") to make false reports, give false testimony, and use "her previous/current DFPS colors to conspire with the defendants and others. . . ." Dkt. No. 48 at 4. According to Plaintiff, K. Hansel has taken advantage of her previous employment and "current close relationship with the Texas DFPS" and has filed numerous frivolous and deceptively false reports of abuse to DFPS, "the courts, providers, teachers, and other individuals with official capacities capable of aiding in the conspiracy to violate [Plaintiff's] rights." *Id.* at 2-3.

DFPS investigator Hemby acted under "color of DFPS" to falsify records. *Id.* at 4. Hemby "had multiple phone calls, texts, emails and live conversations with Kristen Hansel from early October 2024 through the end of the investigation in November, 2024;" she "biasedly conducted her investigation, falsely documented [Plaintiff's] own statements in DFPS documentation, falsely documented material elements in DFPS documentation, and attempted to conceal these facts in agreement to the conspiracy;" and "concealed material evidence in subpoenaed documentation knowing it would be used in a judiciary hearing" in retaliation for Plaintiff's complaint made to

2026, the undersigned entered a Report and Recommendation, recommending Boone's motion be granted in part and denied in part, specifically granting Boone's request to dismiss Plaintiff's claims with prejudice but denying Boone's request for attorney's fees and costs. Dkt. No. 111.

the Office of Consumer Relations ("OCR") about her investigation, which was "handled" locally by Green. Dkt. No. 48-1 at 2.

Green, Hemby's DFPS supervisor, acted under "color of DFPS" to falsify records directly and/or by instruction to do so. Dkt. No. 48 at 4. Like Hemby, Green also allegedly conspired to assist K. Hansel, but she "also played a major role in hiding the criminality of [Hansel's] false reporting against Plaintiff." *Id*. According to Plaintiff, Green and Hemby met "multiple times to strategize in agreement with the conspiracy against [Plaintiff's] rights." Dkt. No. 48-1 at 3. As Hemby's supervisor, Green "directly oversaw, contributed to, and approved of the biased investigation/actions" of Hemby and "also had a role in the handling of [Plaintiff's] complaint . . . to the OCR about the investigation." *Id.*

Family Nurse Practitioner Spraggins, the pediatrician to the minors, acted under "color of medical provider" to falsify medical reports and give false expert testimony. Dkt. No. 48 at 4. According to Plaintiff, Spraggins "was the first documented co-conspirator from as early as March 2020 with several meetings to strengthen the agreement of the conspiracy up through present day," and Spraggins "has also met with one or more of the other Defendants in agreement, and to further the conspiracy against [Plaintiff's] civil rights." Dkt. No. 48-1 at 4. Plaintiff alleges Spraggins "has routinely documented false medical information/diagnosis in agreement with the conspiracy, then concealed this documentation from [Plaintiff] preventing due process and parental oversight for the control of [his] sons' medical care;" "provided false/misleading testimony in agreement with this conspiracy during two judicial hearings; and "has also greatly contributed to the conspiracy and the overall violation" of Plaintiff's rights by giving biased testimony in judicial hearings. *Id*.

Defendants have responded with numerous motions to dismiss the FAC. *See* Dkt. Nos. 50, 59, 60. On the same day Plaintiff filed his responses to two of the motions, Plaintiff filed an

opposed motion for leave to amend (Dkt. No. 72) and proposed Second Amended Complaint. Dkt. No. 73. Shortly thereafter, Plaintiff filed his proposed corrected Second Amended Complaint, which is filed as another motion for leave to amend. *See* Dkt. No. 79, with attachments. Given the multiple motions to dismiss, responsive complaints, and the qualified immunity issues raised by some defendants, discovery was stayed pending resolution of the motions. This Report and Recommendation addresses all remaining motions to dismiss in conjunction with Plaintiff's FAC, and where appropriate, considers the allegations contained in Plaintiff's proposed corrected Second Amended Complaint ("SAC") and his responsive briefing in analyzing whether Plaintiff should be allowed leave to amend.

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. A case is properly dismissed under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). When ruling on a 12(b)(1) motion, a court may evaluate: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

A case cannot proceed without subject matter jurisdiction. As a result, when a Rule 12(b)(1) motion is filed with other Rule 12(b) motions, the court should consider the Rule 12(b)(1) jurisdictional attack before considering any attack on the merits. *Ramming v. United States*, 281

F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1980) (per curiam)). The party asserting jurisdiction bears the burden to prove jurisdiction exists. *Id.*

**B. Rule 12(b)(6)**

A complaint must be dismissed if the plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S.Ct. at 1950. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Southern Christian Leadership Conference v. Supreme Ct.*, 252 F.3d 781, 786 (5th Cir. 2001) (quoting *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.

"*Pro se* plaintiffs are held to a less stringent pleading standard than documents drafted by attorneys and are entitled to a liberal construction, allowing all reasonable inferences that can be drawn from their pleadings." *Morgan v. Fed. Exp. Corp.*, 114 F. Supp. 3d 434, 436 (S.D. Tex. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). Nevertheless, *pro se* plaintiffs must "still comply with the rules of civil procedure." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265 (5th Cir. 1999) (citations omitted). Granting leave to amend is not required [ ] if the plaintiff has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (citation omitted). "[P]leading review is not a game where the plaintiff is permitted to file serial amendments until [s]he finally gets it right." *Whiddon v. Chase Home Finance, L.L.C.*, 666 F.

Supp. 2d 681, 693 (E.D. Tex. 2009) (quoting *U.S. ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004)).

## III. 42 U.S.C. § 1983

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). "Under color of state law" excludes from its reach purely private conduct, no matter how discriminatory or wrongful. *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). However, in specific cases, a private party may be acting "under color of state law" and held liable under § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

A plaintiff may assert a conspiracy claim under § 1983. *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995); *Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004) (explaining that "[f]or a private citizen. . . to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors"). To state a conspiracy claim under § 1983, a plaintiff must allege facts to support "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Blakely v. Andrade*, 360 F. Supp. 3d 453, 490 (N.D. Tex. 2019) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992)). A bald allegation that a conspiracy exists, unsupported by any factual allegations, is insufficient. *Id.* (citing *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987); also citing *Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (stating that a plaintiff is required to allege facts sufficient to suggest an agreement among one or more parties)).

The Supreme Court has distinguished between individual and official capacity claims. *Bevill v. City of Quitman, Texas*, No. 4:19-CV-406, 2025 WL 2306849, at *44 (E.D. Tex. Aug. 11, 2025). Put simply, "an official-capacity suit is just another way of pleading an action against an entity of which an officer is an agent and are treated as suits against the State." *Id.* (quoting *Latiolais v. Cravins*, 484 F. App'x 983, 989 (5th Cir. 2012) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991))). The Fifth Circuit has emphasized the Supreme Court's observation that:

> Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law. Thus, on the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. While the plaintiff in a personal-capacity suit need not establish a connection to governmental policy or custom, officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law.

*Id.* at *44-45 (quoting *Latiolais*, 484 F. App'x at 989).

The only immunities that can be claimed in an official capacity action are forms of sovereign immunity that the entity may possess, such as the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Officials in their individual capacities may be able to assert personal immunity defenses, such as qualified immunity, that are not available in official capacity suits. *Bevill*, 2025 WL 2306849, at *45 (citations omitted). "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once a defendant raises a qualified-immunity defense, the burden shifts to the plaintiff to show that (1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)).

## IV. DFPS DEFENDANTS' MOTION

DFPS Defendants move to dismiss all of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Pursuant to Rule 12(b)(1), DFPS Defendants assert Eleventh Amendment immunity bars Plaintiff's § 1983 claims against DFPS—as an agency of the State of Texas—and DFPS' employees Green and Hemby ("Green/Hemby")—in their official capacities. Dkt. No. 60 at 8-9. Pursuant to Rule 12(b)(6), DFPS Defendants assert qualified immunity bars all individual capacity claims against Harris, who has now been dismissed. *Id.* at 11-14 (further asserting that to the extent Plaintiff seeks to also sue Green and Hemby in their individual capacities, Green and Hemby are also entitled to qualified immunity). According to DFPS Defendants, Plaintiff also fails to sufficiently allege any Fourth or Fourteenth Amendment violations, and Plaintiff's conspiracy claims are conclusory and insufficient to survive a motion to dismiss. *Id.* at 15-26.

Based on the following reasoning, the Court finds: (A) Plaintiff's claims for monetary damages against DFPS and individual defendants Green and Hemby ("Green/Hemby") in their official capacities are jurisdictionally barred by the Eleventh Amendment and should be dismissed without prejudice; (B) Plaintiff's proposed claims for injunctive relief against Green/Hemby in their official capacities would be barred by Eleventh Amendment immunity because there is no alleged ongoing constitutional violation as required for the *Ex parte Young* exception to apply and *Younger* abstention would be appropriate to the extent Plaintiff's requested relief would interfere with an ongoing state proceeding; thus, Plaintiff's request for leave to amend to seek injunctive relief against Green/Hemby in their official capacities should be denied as futile; and (C) Plaintiff's proposed claims against Green/Hemby for monetary damages in their individual capacities would

be barred by qualified immunity; thus, Plaintiff's request for leave to amend should be denied as futile.

### A. Plaintiff's claims for monetary damages against DFPS and Green/Hemby in their official capacities are jurisdictionally barred by the Eleventh Amendment and should be dismissed without prejudice

DFPS Defendants persuasively raise a Rule 12(b)(1) jurisdictional challenge to Plaintiff's monetary claims against DFPS and Green/Hemby in their official capacities based on Eleventh Amendment immunity.[4] Dkt. No. 60 at 8-9.

The Eleventh Amendment to the United States Constitution provides that states, state agencies, and state officials acting in their official capacities are immune from suits in federal court brought by citizens of other states and from suits brought by a state's own citizens. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984); *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). The bar applies not only to suits against the state itself, but also to state actors in their official capacities. *LeBlanc*, 627 F.3d at 124. Sovereign immunity acts as a jurisdictional bar and applies "regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100. There are three possible exceptions to Eleventh Amendment immunity: (i) valid abrogation by Congress; (ii) waiver or consent to suit by the state; or (iii) the state's amenability to suit under the *Ex parte Young* doctrine. *Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761, 773 (N.D. Miss. 2012), *aff'd*, 592 F. App'x 260 (5th Cir. 2014).

[4] While sovereign immunity is often referred to as "Eleventh Amendment immunity," the Supreme Court has noted that such a phrase is "something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Liu v. Texas State Univ.*, No. A-18-CV-00938-LY, 2019 WL 3804491, at *3 n.5 (W.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 13253483 (W.D. Tex. Aug. 30, 2019) (quoting *Alden v. Maine*, 527 U.S. 706, 713 (1999)). As the Supreme Court explained in *Alden*, "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." *Id.* Regardless, courts continue to use "Eleventh Amendment immunity" and "sovereign immunity" interchangeably. *Id.*

It is well settled—and Plaintiff does not dispute—that Defendant DFPS is an administrative agency of the state. *Kirschner v. Texas Dep't of Fam. & Protective Servs.*, No. 4:21-CV-00469-SDJ-CAN, 2022 WL 4480322, at *6 (E.D. Tex. July 21, 2022), *report and recommendation adopted*, 2022 WL 4474146 (E.D. Tex. Sept. 26, 2022). As such, DFPS is immune from suit under the Eleventh Amendment unless an exception applies. Here, no exception to Eleventh Amendment immunity applies.

First, abrogation does not apply because § 1983 does not explicitly indicate Congress's intent to abrogate a state's Eleventh Amendment immunity from suit. *Yul Chu*, 901 F. Supp. 2d at 773 (citing cases).

Second, Plaintiff never identified a waiver of sovereign immunity for his claims against DFPS. *Kirschner*, 2022 WL 4480322, at *6 (citing *Devabhaktuni v. C.P.S.*, No. 3:19-CV-1743-N-BT, 2020 WL 4745050, at *3 (N.D. Tex. July 16, 2020) ("To invoke this Court's subject-matter jurisdiction, Plaintiff must identify a statute waiving the DFPS's sovereign immunity from suit in federal court for the specific claims Plaintiff seeks to bring against the DFPS. Plaintiff has failed to identify any such statute.")), *report and recommendation adopted*, 2020 WL 4732088 (N.D. Tex. Aug. 14, 2020). Numerous courts have expressly found DFPS' sovereign immunity is not waived for § 1983 claims alleging violations of due process or equal protection committed during an investigation, as is the case here. *Kirschner*, 2022 WL 4480322, at *6 (citing *Collins v. Texas Dep't of Fam. & Protective Servs.*, No. 1:20-CV-367-LY, 2021 WL 466135, at *3 (W.D. Tex. Feb. 9, 2021) ("Plaintiff alleges that TDFPS violated her First and Fourteenth Amendment rights in connection with its investigation and subsequent findings of abuse, neglect, and exploitation of Plaintiff's mother. TDFPS argues that Plaintiff's constitutional claims under § 1983 are barred by sovereign immunity. The Court agrees."); *Ramos v. Texas Dep't of Fam. & Protective Servs.*, No.

SA-20-CV-00232-FB, 2020 WL 2214428, at *2 (W.D. Tex. May 7, 2020) ("Plaintiff therefore cannot sue DFPS, a state agency, for violations of due process and equal protection under Section 1983."), *report and recommendation adopted sub nom.*, 2020 WL 8970689 (W.D. Tex. June 10, 2020); also citing *Stem v. Ahearn*, 908 F.2d 1, 4 (5th Cir. 1990) ("Texas has not consented to be sued in federal court by resident or nonresident citizens regarding its activities to protect the welfare of children.")).

Instead of raising a valid argument that the State of Texas has waived sovereign immunity for his suit against DFPS, "Plaintiff alleges a number of legal conclusions unsupported by authority that the [DFPS] Defendants have somehow waived sovereign immunity." *Roland v. Texas*, No. 4:21-CV-415-SDJ-CAN, 2022 WL 1192781, at *4 (E.D. Tex. Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 622320 (E.D. Tex. Mar. 3, 2022). For example, Plaintiff argues his claims are federal claims and therefore are not barred by sovereign immunity. Dkt. No. 70 at 2 (stating "*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), limits suits against state agencies under *state law* in federal court, but I bring my claims solely under federal constitutional provisions and 42 U.S.C. §§ 1983, 1985, and 1986") (emphasis added). However, Plaintiff's reliance on *Pennhurst* is misplaced.

To be sure, the Supreme Court noted the Eleventh Amendment bar would apply to pendent state law claims against nonconsenting state defendants in federal court. *See Hernandez v. Texas Dep't of Hum. Servs.*, 91 F. App'x 934, 935 (5th Cir. 2004) (citing *Pennhurst*, 465 U.S. at 120) (further noting the supplemental jurisdiction statute, which codified pendent jurisdiction, does not abrogate Eleventh Amendment immunity). However, this was after the Supreme Court held the Eleventh Amendment is a "specific constitutional bar against hearing even *federal* claims that otherwise would be within the jurisdiction of the federal courts." *Pennhurst*, 465 U.S. at 120

(emphasis original). Nothing in the Supreme Court's reasoning in *Pennhurst* suggests the Eleventh Amendment would not bar Plaintiff's federal claims.

Finally, the third possible exception to Eleventh Amendment immunity, recognized by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), does not apply to Plaintiff's claims for monetary relief against DFPS and Green/Hemby in their official capacities. In his response, Plaintiff references *Ex parte Young*, stating "sovereign immunity does not bar suits against state officers in their individual capacities for prospective relief or for damages under § 1983." *See* Dkt. No. 70 at 2. If properly pleaded, *Ex parte Young* might allow Plaintiff to seek monetary relief from Green/Hemby in their personal capacities and injunctive relief from Green/Hemby in their official capacities. *See Yul Chu*, 901 F. Supp. 2d at 774.

However, the *Ex parte Young* exception does not apply to state agencies. *Roland*, 2022 WL 1192781, at *5 (citing *Collins*, 2021 WL 466135, at *4 (citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993))). Thus, Plaintiff's alleged claims for damages against DFPS are barred by the Eleventh Amendment. *See Thomas v. Texas Dep't of Fam. & Protective Servs*., No. 4:21-CV-00437-O, 2021 WL 4808651, at *4 (N.D. Tex. July 29, 2021) (granting defendant's motion to dismiss because plaintiff's § 1983 claim was "barred because DFPS is entitled to sovereign immunity and the *Ex parte Young* exception does apply to remove the agency's immunity").

Finding that Plaintiff's claims against DFPS are barred by sovereign immunity also compels the dismissal of Plaintiff's claims for monetary damages against Green/Hemby in their official capacities.

> Sovereign immunity bars suits against state officials in their official capacity when "the state is the real, substantial party in interest." "The state is the real party in interest if the decision rendered in a case would operate against the sovereign, expending itself on the public treasury, interfering with public administration, or

> compelling the state to act or to refrain from acting." Because state sovereign immunity has not been abrogated by § 1983, Plaintiff cannot bring a damages claim against Masters in her official capacity. Thus, Plaintiff's claim seeking monetary damages against Masters is barred by sovereign immunity.

*Roland*, 2022 WL 1192781, at *5 (quoting *Collins*, 2021 WL 466135, at *4 (internal citations omitted in *Roland*) (first quoting *Pennhurst*, 465 U.S. at 101; then citing *Spec's Fam. Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020))). Because a damages suit against a state official for official acts (as well as a suit against the State itself) is barred by the Eleventh Amendment, Plaintiff's monetary claims against Green/Hemby in their official capacities are barred by sovereign immunity.

Allowing Plaintiff to amend his allegations for monetary damages against DFPS and Green/Hemby in their official capacities would be futile. *Id.* at *9; *see also Whiddon v. Chase Home Finance, L.L.C.*, 666 F. Supp. 2d 681, 693 (E.D. Tex. 2009) ("[W]here a proposed amendment would be a futile act, a court does not abuse its discretion in denying leave to amend."). It is not clear how Plaintiff could amend to avoid his claims being barred by sovereign immunity. DFPS is undisputedly an administrative agency of the State of Texas. Plaintiff has not identified a lawful basis for finding a waiver of DFPS' immunity. Accordingly, the undersigned recommends the Court grant DFPS' Rule 12(b)(1) motion and dismiss Plaintiff's claims for monetary relief against DFPS and Green/Hemby in their official capacities without prejudice. *Roland*, 2022 WL 1192781, at *9; *see also Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and not with prejudice.").

**B. Plaintiff's proposed claims for injunctive relief against Green/Hemby in their official capacities would be barred by Eleventh Amendment immunity and the *Younger* abstention doctrine, making further amendment futile**

Plaintiff's possible claims for injunctive relief present a different issue. *Kerns v. Smith Cnty.*, No. 6:24-CV-00427-JCB-JDL, 2025 WL 2946094, at *4 (E.D. Tex. Mar. 25, 2025) (noting the *Ex parte Young* narrow exception to sovereign immunity), *report and recommendation adopted sub nom.*, 2025 WL 2694846 (E.D. Tex. Sept. 22, 2025). Plaintiff argues sovereign immunity does not apply to the extent he is suing Green/Hemby seeking prospective injunctive relief under the *Ex parte Young* exception. Dkt. No. 70 at 2. However, there are problems with Plaintiff's argument.

As an initial matter, Plaintiff's operative complaint (Dkt. No. 48) clearly expresses Plaintiff's intent to seek "primarily Compensatory Damages which are Economic and Non-Economic Damages." Dkt. No. 48-2 at 4-5. There is no allegation seeking injunctive relief, much less injunctive relief against the appropriate state officials. *See Yul Chu*, 901 F. Supp. 2d at 775 ("Plaintiff's Section 1983 claims for injunctive relief are permitted only if brought against the appropriate state officials and seeking prospective relief to end a continuing violation of federal law.") (citations omitted). However, the proposed SAC attempts to add a claim for injunctive relief "to prevent further interference with Plaintiff's parental rights." Dkt. No.79 at 7. According to an affidavit attached to the proposed SAC, "[a]fter getting a full view of all of the people that were conspiring. . . to violate [Plaintiff's] civil and parental rights that brought severe damages to [his] family, [Plaintiff] filed this complaint on May 13, 2025 hoping to stop further damages and seek relief through amicable resolve." Dkt. No. 79-3 at 18. Therefore, the Court assumes Plaintiff seeks leave to amend to sue Green/Hemby in their official capacities for injunctive relief.

However, leave to amend would be futile for two reasons: (i) there is no alleged continuing violation of federal law to enjoin, so the *Ex parte Young* exception would still not apply; and (ii)

*Younger* abstention would be appropriate to the extent Plaintiff's requested relief would interfere with an ongoing state proceeding.

Plaintiff fails to sufficiently allege or propose to allege—in his proposed SAC or responsive briefing—that any prospective relief would seek to end a *continuing violation of federal law*. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255-56 (2011) ("[I]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."). Although Plaintiff's proposed SAC seeks "[i]njunctive relief to prevent further interference with Plaintiff's parental rights," Dkt. No. 79 at 7, the allegations contained in the proposed amended complaint pertain to *past* alleged violations of Plaintiff's constitutional rights. *Id.* at 1, 2 (alleging Hemby "falsified records, misrepresented statements, and violated Plaintiff's constitutional rights" and further alleging Green "approved and furthered the biased investigation and actions taken against Plaintiff"). If "there is no continuing violation of federal law to enjoin in this case, an injunction is not available." *Roland*, 2022 WL 1192781, at *4 (citing *Green v. Mansour*, 474 U.S. 64, 71 (1985)). Because Plaintiff's proposed SAC does not allege a continuing violation of federal law to enjoin, amendment would be futile because the *Ex parte Young* exception still would not apply.

In his surreply, Plaintiff asserts the harm he "challenges—the sustained misuse of DFPS processes and concealment of official misconduct—has been ongoing since DFPS's involvement and remains unresolved." Dkt. No. 85 at 3-4 (stating he seeks prospective relief to correct the record, prevent further misuse of CPS findings, and injunctive measures against ongoing coordination with private parties lacking legal authority). The problem with this argument is that *Younger* abstention would be appropriate to the extent Plaintiff's requested relief "would interfere

with an ongoing state proceeding," as it appears it would if based on Plaintiff's allegations regarding future harm. *Saloom v. Texas Dep't of Fam. & Child Protective Servs.*, 578 F. App'x 426, 429 (5th Cir. 2014) (quoting *Bice v. La. Pub. Defender Bd.*, 677 F.3d 712, 717 (5th Cir. 2012); *see also Younger v. Harris*, 401 U.S. 37 (1971).

Abstention is required when "(1) there is an ongoing state proceeding that is judicial in nature; (2) the state has an important interest in regulating the subject matter of the claim; and (3) there is an adequate opportunity in the state proceeding to raise the constitutional challenges." *Bogard v. Lowe*, No. SA-21-CV-00021-FB, 2022 WL 1050332, at *3 (W.D. Tex. Apr. 6, 2022), *report and recommendation adopted sub nom.*, 2022 WL 22867447 (W.D. Tex. Apr. 30, 2022). The first prong for abstention would be satisfied here. Both parties reference a pending civil custody proceeding where Plaintiff's ex-wife advised the state court that a report of neglectful supervision by Plaintiff had been made to DFPS in October 2024.

Plaintiff argues his claims against DFPS are incidental to the state court custody proceeding. Dkt. No. 85 at 5; *see also* Dkt. No. 70 at 2 (stating *Younger* abstention does not apply because "[his] claims seek to vindicate independent federal rights under the Constitution and are not inextricably tied to the outcome of any pending state proceeding"). However, Plaintiff fails to show that the child custody proceeding is complete.[5] Plaintiff's requested prospective relief to correct the record, prevent further misuse of CPS findings, and enjoin ongoing coordination with private parties lacking legal authority would interfere with that proceeding.

[5] The court with continuing jurisdiction over the children is the 211th judicial district court of Denton County, Texas. (Cause No. 19-9035-211). The docket shows the case is still active (post-judgment actions pending) (https://justice1.dentoncounty.gov/PublicAccessDC/CaseDetail.aspx?CaseID=2684911). As recently as October 14 2025, Plaintiff filed his notice of a change of address in that proceeding.

The second prong for abstention is also satisfied. Family, child welfare, and child custody issues are important state interests. *Bogard*, 2022 WL 1050332, at *4 (citing cases). Finally, the third prong is satisfied because claims challenging the constitutionality of Texas' family laws in the removal of Plaintiff's children can be raised in state court proceedings. *Id.* (citing *Moore v. Sims*, 442 U.S. 415 (1979)).[6]

Because Plaintiff's proposed claims for injunctive relief would also be precluded by the *Younger* abstention doctrine, Plaintiff's motion for leave to amend to assert equitable relief claims against Green/Hemby in their official capacities should be denied as futile.

### C. Plaintiff's proposed claims for monetary damages against Green/Hemby in their individual capacities would be barred by qualified immunity, making further amendment futile

Liberally construing Plaintiff's proposed allegations and responsive briefing, Plaintiff seeks leave to amend to assert claims for monetary damages against Green/Hemby in their individual capacities. If so, the *Younger* doctrine would not apply. *Saloom*, 578 Fed. App'x at 429 (stating the *Younger* doctrine does not apply to suits for money damages). However, as discussed below, Green/Hemby have persuasively asserted the defense of qualified immunity to the extent Plaintiff seeks to amend to sue them in their individual capacities.

Of note, Plaintiff's FAC brought similar individual capacity claims only against DFPS employee Tina Harris, but Plaintiff dismissed those claims following Harris' assertion of qualified immunity. *See* Dkt. No. 48 at 1-2; *see also* Dkt. No. 78. Green/Hemby now rely on the same

[6] In *Moore*, the plaintiffs' children were removed from their custody and temporary custody was given to the Texas Department of Public Welfare. *Bogard v. Lowe*, No. SA-21-CV-00021-FB, 2022 WL 1050332, at *4 (W.D. Tex. Apr. 6, 2022), *report and recommendation adopted sub nom.*, 2022 WL 22867447 (W.D. Tex. Apr. 30, 2022) (citing *Moore v. Sims*, 442 U.S. 415, 420 (1979)). The plaintiffs in that case appeared in state court and could have raised their constitutional challenges in that forum. *Id.* Instead, while the custody issue was pending in state court, the plaintiffs filed suit in federal court challenging the constitutionality and application of Texas' family laws in the removal of their children. *Id.* (citing *Moore*, 442 U.S. at 421). The Supreme Court held that, because the plaintiffs could have raised their constitutional concerns in the state court proceedings, the *Younger* doctrine applied, and the federal court was required to abstain from exercising jurisdiction. *Id.* (citing *Moore*, 442 U.S. at 425–26).

arguments raised by Harris to assert the defense of qualified immunity. Dkt. No. 60 at 11-14; Dkt. No. 82 at 4. Therefore, for amendment to not be futile, Plaintiff would need to overcome a defense of qualified immunity. As explained below, he fails to do so.

**1. Plaintiff's proposed claims**

In his responsive briefing and proposed SAC, Plaintiff alleges state actors Green and Hemby conspired with K. Hansel to violate the following constitutional rights: (1) **Fourth Amendment** (April 2021 coercive interviews of his children in isolation; April 2021 removal of children without a warrant or exigency; and October 2024 removal via ex parte court order obtained through misleading drug test results and false evidence which DFPS failed to correct in the record) (Dkt. No. 70 at 5, 7; Dkt. No. 79 at 5-6); (2) **Fourteenth Amendment substantive and procedural due process** (wrongful interference with Plaintiff's right to care for and control his children and to the right to family integrity by removing the children from Plaintiff's custody during the April 2021 warrantless seizure and during the October 2024 court-ordered removal premised on misleading and false information) (Dkt. No. 70 at 4-6; Dkt. No. 79 at 5-6); (3) **Fourteenth Amendment equal protection** (gender-based discrimination based on DFPS' persistent bias favoring the mother and undermining the father's role) (Dkt. No. 70 at 5); and (4) **First Amendment** ("Defendants escalated their conduct immediately after I filed complaints with the DFPS Office of Consumer Relations and initiated this lawsuit. Within days of Kristen Hansel and DFPS responding to this lawsuit, DFPS received and began investigating yet another frivolous report from Kristen Hansel."). *Id.* at 7; *see also* Dkt. Nos. 79 at 5-6, 79-1 at 2-3.[7]

[7] Although Plaintiff's FAC briefly states 42 U.S.C. §§ 1985, 1986 are "violations performed by Defendants in conjunction with Sec 1983" (Dkt. No. 48 at 3) and the proposed SAC alleges "Defendants conspired under 42 U.S.C. § 1985 to violate Plaintiff's civil rights by fabricating evidence and concealing material facts to justify their unconstitutional actions" (Dkt. No. 79 at 5-6), Plaintiff never references these claims in his responsive briefing to DFPS Defendants' motion to dismiss. Plaintiff only references § 1983 as the basis for any alleged claims against Green/Hemby. *See* Dkt. Nos. 70 at 2, 85 at 1.

Plaintiff's proposed SAC provides additional detail regarding the operative facts underlying Plaintiff's claims against DFPS and Green/Hemby. Plaintiff alleges he and K. Hansel were involved in a contentious divorce proceeding starting in 2019, and the parties shared 50/50 custody of their children until the "escalation of false allegations in 2020, which began a series of unjustified CPS investigations and removals." Dkt. No. 79 at 3. Plaintiff alleges K. Hansel "fabricated allegations of abuse to disrupt Plaintiff's custodial rights, using her former position at DFPS to manipulate CPS investigations." *Id.* Plaintiff alleges these false reports led to the illegal removal of Plaintiff's children multiple times. *Id.*

The allegations regarding DFPS investigations and DFPS employees fall into two timeframes, April 2021 and October 2024. However, Green and Hemby are referenced only in the October 2024 timeframe. The proposed allegations related to that timeline are as follows:

Plaintiff alleges K. Hansel filed for an ex parte second temporary restraining order (TRO#2) in October 2024, based on misleading results from a drug test K. Hansel improperly gave their son, and Plaintiff was completely restricted from even speaking to his children for three weeks until October 31, 2024. Dkt. No. 79-3 at 12-13. On October 12, 2024, Plaintiff learned K. Hansel had started another CPS case against him, raising six allegations of abuse (1 per child for neglect, drug exposure, and emotional abuse). *Id.* at 13, 15. On October 15, Green and Laura Lewis met to approve a case for administrative closure, but the details of what case were redacted. *Id.* at 13. That same day, Hemby took a call from Plaintiff and falsely documented that Plaintiff admitted to vaping THC around his children (which was not true) to substantiate K. Hansel's allegation. *Id.* Plaintiff sent messages to Hemby, but she continued to make multiple entries into the CPS documentation that Plaintiff had admitted to this kind of irresponsible behavior. *Id.* at 13-14.

On October 17, Plaintiff met with Hemby at the Denton DFPS office, and Hemby again falsely documented that Plaintiff admitted to vaping THC around his children, "perfectly aligning with the original false allegation Kristen gave." *Id.* at 14. On October 18, Hemby documented receiving an email from K. Hansel with TRO#2 documents, "a misleading interpretation" of Plaintiff's son's results directly indicating usage, and "other frivolous allegations." *Id.* at 15.

On October 21, Plaintiff's Office of Consumer Relations (OCR) complaint (which Plaintiff had initiated around October 12 against K. Hansel for her "unethical actions using DFPS") "made it through," and the special investigator assigned to the case talked to Hemby and K. Hansel. *Id.* at 13, 15. On October 22, Hemby interviewed K. Hansel at the Denton DFPS office, and on October 23, K. Hansel and Plaintiff "had court for TRO#2." *Id.* at 15.

On November 4, K. Hansel gave Hemby "clear definition to her arrangement with Whitney Spraggins to be a complicit witness & provide false expert testimony." *Id.* at 16. K. Hansel also told Hemby (in a censored entry in the DFPS case file) "to leave the case open because she has a direct person to contact." *Id.* According to Plaintiff, this "single sentence should remove all doubt that Kristen was in fact acting under color of law, and [Hemby]/DFPS wanted to conceal this information." On November 8, 2024, Hemby officially closed the case. *Id.*

On February 12, 2025, Plaintiff subpoenaed the CPS documentation, and upon reviewing it was shocked to see the extent of the censoring done by Hemby to protect herself, DFPS, and K. Hansel from "the nefarious actions done in collusion with Kristen's false allegation." *Id.* at 17. Plaintiff alleges the qualified immunity for the DFPS officials should be waived in consideration of their collusion with K. Hansel for the false report, their censoring of information to hide their actions, and ultimately for negligent disregard of Plaintiff's children's safety. *Id.* at 17-18.

**2. Applicable law**

"Qualified immunity at the pleading stage raises two questions. First, does the complaint allege a constitutional violation? If so, was the violation clearly established so that the government official would have known she was violating the law?" *Romero v. Brown*, 937 F.3d 514, 519 (5th Cir. 2019) (citation omitted). Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regul. Servs*., 380 F.3d 872, 879 (5th Cir. 2004) (citation omitted). Where the pleadings are insufficient to overcome qualified immunity, the district court must grant a motion to dismiss without the benefit of pre-dismissal discovery. *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022); *see also Owens v. Louisiana State Univ.*, No. CV 21-242-WBV-SDJ, 2023 WL 2116060, at *3 (M.D. La. Feb. 17, 2023) (stating qualified immunity is a defense to § 1983 claims).

The Fourth and Fourteenth Amendments guarantee that "the government may not seize a child from his or her parents absent a court order, parental consent, or exigent circumstances." *Gates v. Tex. Dep's of Protective & Regul. Servs*., 537 F.3d 404, 435 (5th Cir. 2008) It is well established in the Fifth Circuit that the Fourth Amendment regulates social workers' civil investigations, *Roe v. Tex. Dep't of Protective & Regul. Servs.*, 299 F.3d 395, 401 (5th Cir. 2002), and protects against unreasonable seizures of children from their homes, *Wooley v. City of Baton Rouge*, 211 F.3d 913, 925 (5th Cir. 2000). When the Government takes away a parent's right to custody and control of his or her child, it may violate substantive due process. *C.M. v. United States*, 672 F. Supp. 3d 288, 343 (W.D. Tex. 2023) (citing *Romero*, 937 F.3d at 519). Because "the right to family integrity has been recognized in only a narrow subset of circumstances," a plaintiff must demonstrate that the "guarantee of substantive due process encompasses their assertions."

*C.M.*, 672 F. Supp. 3d at 344 (citation omitted). Courts must, therefore, "focus on the allegations in the complaint to determine how [the party] describes the constitutional right at stake and what" was allegedly done to constitute a deprivation of that right. *Id.* (citation omitted). And interfering with parents' "liberty interest in the care, custody, and management of their children" may also violate the procedural due process, which requires that "certain procedures" be followed "before encroaching on those parental rights." *Id.* at 343 (citing *Romero*, 937 F.3d at 521).

**3. Qualified immunity analysis**

The Fifth Circuit has repeatedly held that childcare workers are entitled to qualified immunity in the performance of discretionary, non-prosecutorial functions. *Martin v. Dep't of Child. & Fam. Servs.*, 500 F. Supp. 3d 527, 544 (E.D. La. 2020) (citing *Doe v. State of La.*, 2 F.3d 1412, 1416 (5th Cir. 1993)). Therefore, to hold the child protective services workers personally liable here, Plaintiff must pierce the qualified immunity that they inherently enjoy by demonstrating that the workers breached "clearly established statutory or constitutional rights of which a reasonable person would have known." *Stem*, 908 F.2d at 5 (quoting *Harlow*, 457 U.S. at 818). Plaintiff's proposed SAC alleges Green/Hemby—from early October 2024 through the end of the DFPS investigation in November 2024[8]—violated the (a) Fourth Amendment, (b) Fourteenth Amendment substantive due process clause, (c) Fourteenth Amendment procedural due

[8] Although Plaintiff's proposed SAC references alleged Fourth and Fourteenth Amendment constitutional violations during the April 2021 investigation, the operative facts regarding that timeframe do not mention Hemby or Green. Rather, they focus on other DFPS employees such as Natalie Kurtz, Travis Weeks, Danielle Grubisic, and Ruth Pope (Dkt. No. 79-3 at 6-9), all of whom Plaintiff voluntarily dismissed from this lawsuit in July 2025. *See* Dkt. Nos. 68, 77. Because Plaintiff does not identify Hemby or Green as personally involved in the alleged constitutional violations during the April 2021 timeframe, any § 1983 claims against Green/Hemby in their individual capacities for any alleged constitutional violations during the April 2021 timeframe would fail to state a claim under Rule 12(b)(6). *See DeMarco v. Davis*, 914 F.3d 383, 390 (5th Cir. 2019) ("[T]o state a cause of action under section 1983, the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violations alleged."). Thus, any potential claim against Green and Hemby in their individual capacities are limited to the 2024 timeframe.

process clause, (d) Fourteenth Amendment equal protection clause, and (e) First Amendment. *See* Dkt. No. 79-1 at 2-3. For the reasons below, if Plaintiff were allowed leave to amend to assert these claims against Green and Hemby in their individual capacities, Green and Hemby would be entitled to dismissal of all the claims based on qualified immunity.

**a. Fourth Amendment**

In his responsive briefing and proposed SAC, Plaintiff raises one Fourth Amendment violation potentially applicable to Green/Hemby: the October 2024 "removal" of his children which occurred "via ex parte court order obtained through misleading" drug test results and false evidence which DFPS failed to correct in the record. Dkt. No. 70 at 7; *see also* Dkt. No. 79 at 5; *see also* Dkt. No. 79-1 at 2.

However, Plaintiff has no Fourth Amendment claim here. *See Bissell v. Mata*, No. 6:21-CV-00924-ADA-DTG, 2025 WL 1943752, at *6 (W.D. Tex. June 16, 2025), *report and recommendation adopted*, 2025 WL 1942977 (W.D. Tex. July 15, 2025) (citation omitted). Instead, only children that have been seized have standing to bring a Fourth Amendment claim. *Romero*, 937 F.3d at 523. Plaintiff does not bring a Fourth Amendment claim on behalf of his children. Even more fundamentally, Plaintiff does not sufficiently allege that DFPS or Green/Hemby ever seized the children during the October 2024 timeframe.[9] Plaintiff's proposed SAC does not allege any facts that show Green/Hemby's conduct violated the Fourth Amendment, as required to satisfy the first step of the qualified immunity analysis.

[9] According to DFPS Defendants, since 2020, reports were made to DFPS regarding abuse or neglect by one or the other parent which DFPS was statutorily required to investigate under Chapter 261 of the Texas Family Code. Dkt. No. 82 at 6. Even though DFPS is permitted to "remove" children and take custody of them under Chapter 262, DFPS Defendants represent neither DFPS nor its employees "removed" the Hansels' children at any point in the intervening years. Thus, when Plaintiff refers to his children being "removed," he is referring to actions taken by K. Hansel to either withhold access to the children in violation of a custody order or her motion to have the custody order amended. *Id.*

**b. Fourteenth Amendment substantive due process**

Plaintiff's proposed SAC alleges Hemby's investigation was biased, she falsely documented admissions of Plaintiff's THC use, and she falsely documented material elements in DFPS records. Dkt. No. 79-1 at 2. According to Plaintiff, Hemby concealed material evidence regarding "proof of [K. Hansel's] false reporting at the beginning of the [October 2024] investigation," "knowing it would be used in a judiciary hearing for [Plaintiff's] family's integrity." *Id.*; *see also* Dkt. No. 70 at 4-5 (stating DFPS failed to alert the court or intervene after being presented with evidence that the drug test relied upon by K. Hansel was manipulated and DFPS investigators, engaged in judicial deception by documenting false admissions of Plaintiff's THC use, disregarding exculpatory evidence, and failing to disclose critical information in response to court-ordered disclosures). Plaintiff's proposed SAC further alleges Green, as Hemby's supervisor, "directly oversaw, contributed to, and approved of the biased investigation/actions" of Hemby. *Id.* at 3. All of these proposed claims would be barred by qualified immunity.

The Supreme Court has "recognized on numerous occasions that the relationship between parent and child is constitutionally protected." *C.M.*, 672 F. Supp. 3d at 342-43 (citation omitted); *see also Morris v. Dearborne*, 181 F.3d 657, 671 (5th Cir. 1999) (There is a general "constitutional right to family integrity"); *Gates*, 537 F.3d at 434 ("The Supreme Court has held that parents have a fundamental liberty interest in the care, custody, and management of their child."). However, with respect to substantive due process, the Supreme Court held long ago that "in a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *C.M.*, 672 F. Supp. 3d at 345-46 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). It further recognized that "conduct intended to injure in some way unjustifiable

by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* (quoting *Lewis*, 523 U.S.at 849). "If this standard is met, a court must next determine whether there exist historical examples of recognition of the claimed liberty protection at some appropriate level of specificity." *Morris*, 181 F.3d at 668.

Assuming Plaintiff's proposed allegations are sufficient to establish a substantive due process violation, Fifth Circuit precent establishes that qualified immunity would protect Green/Hemby from Plaintiff's right to family integrity claim because the right is not clearly established under the facts of this case. *See Bissell*, 2025 WL 1943752, at *2-*3.

For example, in *Doe*, the plaintiff sued Louisiana child protective workers, claiming various violations of the plaintiff's Fourteenth Amendment right to family integrity. *Id.* at *3 (citing *Doe v. Louisiana*, 2 F.3d 1412, 1415 (5th Cir. 1993), *cert denied*, 510 U.S. 1164 (1994)). The plaintiff alleged the defendants withheld and ignored exculpatory evidence and made misrepresentations to the mother and two judges. *Id.* The *Doe* case was particularly egregious, involving "nightmarish" conduct by two child protective workers during a four-month "witch hunt." *Id.* (citing *Doe*, 2 F.3d at 1421 (King, J., concurring)). The two workers allegedly suppressed reports indicating that no sexual abuse occurred, misrepresented the nature of the finding in those reports, secretly obtained a court order awarding custody of Doe's son to his mother, and provided false information to the District Attorney's office to have the children removed from their grandparents' temporary custody. *Id.* Despite these allegations, the Fifth Circuit held as a matter of law that the child protective workers did not violate a clearly established constitutional right at the time of their conduct. *Id.* (citing *Doe*, 2 F.3d at 1418 (dismissing the plaintiff's right to family integrity claims for failure to state a claim)).

Similarly, in *Kiser*, the Fifth Circuit held that the child protective workers were protected by qualified immunity because the right to family integrity was not clearly established under the facts of that case. *Id.* at *4 (citing *Kiser v. Garrett*, 67 F.3d 1166, 1167 (5th Cir. 1995)). In *Kiser*, the children were temporarily removed from their home and later returned to their parents. *Id.* (citing *Kiser*, 67 F.3d at 1169). The plaintiffs alleged that the defendants withheld exculpatory evidence, gave false testimony in state court, and continued an investigation after they had knowledge that the parent could not have caused the injury that started the investigation. *Id.* (citing *Kiser*, 67 F.3d at 1169–71). The *Kiser* court concluded that, "although a substantive due process right to family integrity has been recognized, the contours of that right are not well-defined, and continue to be nebulous, especially in the context of a state's taking temporary custody of a child during an investigation of possible parent abuse." *Id.* (citing *Kiser*, 67 F.3d at 1173).

Further, "[D]istrict courts in this circuit have consistently held that misrepresenting or deliberately withholding evidence during a child services investigation does not defeat qualified immunity." *Martin*, 500 F. Supp. 3d at 547–48 (quoting *Darian v. Cashe*, Civ. A. No. 17-52-JJB-EWD, 2017 WL 3326976, at *13 (M.D. La. July 14, 2017)); *see also Martin v. Texas Dep't of Protective & Regul. Servs.*, 405 F. Supp. 2d 775, 781 (S.D. Tex. 2005) (stating social workers investigating suspected child abuse are entitled to qualified immunity, even in the face of evidence that the social workers unnecessarily prolonged an investigation, threatened parents with removal of their children, and even misled families about the danger facing their children). In *Foley*, the plaintiffs alleged a DFPS caseworker (Little) intentionally misled the state court, fabricated evidence, and hid exculpatory evidence in order to obtain a temporary removal order. *Foley v. Texas Dep't of Fam. & Protective Servs.*, No. 1:12-CV-270, 2012 WL 6803598, at *3 (E.D. Tex. Nov. 14, 2012), *report and recommendation adopted*, 2013 WL 84852 (E.D. Tex. Jan. 7, 2013).

The court explained the facts of *Doe* and *Kiser* were "on all fours with the case at hand: the allegations made by the Foleys are that a child-protective worker misled a court and conducted an incomplete investigation in order to obtain temporary removal of their children." *Id.* at *13. In line with the holdings in *Doe* and *Kiser*, the court found the right to family integrity invoked by the Foleys was not clearly established. *Id.*; *see also Darian*, 2017 WL 3326976, at *12 (holding the plaintiff had not shown eight DCFS employees violated a clearly established constitutional right based upon their involvement in an underlying state custody proceeding, noting the plaintiff ignored "the fact that his parental rights were impinged only after a judicial hearing and that the eight DCFS employees never physically removed Darian's children from him or otherwise altered his parental rights under the law).

In line with this precedent,[10] the Court finds the right to family integrity invoked by Plaintiff is not clearly established under these facts and that Green/Hemby would be entitled to qualified immunity.[11]

[10] Plaintiff has not directed the Court to any controlling authority that would undermine the reasoning of these cases, which has repeatedly been endorsed. *See Bissell v. Mata*, No. 6:21-CV-00924-ADA-DTG, 2025 WL 1943752, at *4 (W.D. Tex. June 16, 2025), *report and recommendation adopted*, 2025 WL 1942977 (W.D. Tex. July 15, 2025) (citing *Jennings v. Abbott*, 538 F. Supp. 3d 682, 695 (N.D. Tex. 2021) (noting that the Fifth Circuit has not found a clearly established violation of the right to family integrity in any case against a child welfare worker (collecting cases))).

[11] Additionally, Green would be entitled to qualified immunity because Plaintiff has not proposed to allege she affirmatively participated in the alleged acts or that she implemented an unconstitutional policy that casually resulted in a constitutional injury. *Gates v. Tex. Dep's of Protective & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) (a supervisor is liable under § 1983 if: "(1) [s]he affirmatively participates in the acts that cause the constitutional deprivation, or (2) [s]he implements unconstitutional policies that causally result in the constitutional injury."). The latter policy-focused inquiry is akin to the standard for municipal liability. *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019) (citing *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 426 (5th Cir. 2006)). What is more, "[a] supervisory official is held to a standard of 'deliberate indifference,' which requires proof that the supervisor 'disregarded a known or obvious consequence of his action.'" *Banks v. Herbrich*, 90 F.4th 407, 417 (5th Cir. 2024) (citations omitted). Plaintiff's proposed SAC alleges Green, as Hemby's supervisor, "directly oversaw, contributed to, and approved of the biased investigation/actions" of Hemby. Dkt. No. 79-1 at 3. This conclusory allegation is not enough to show deliberate indifference.

**c. Fourteenth Amendment procedural due process**

Plaintiff's procedural due process claims involve the same underlying facts as his substantive due process claim. Plaintiff appears to allege that a civil conspiracy between Hemby and K. Hansel resulted in "judicial deception" (centering around Hemby's introduction of false evidence regarding Plaintiff's THC use into the October 2024 investigation record and her alleged concealment of exculpatory information), which rendered the judicial process constitutionally inadequate. Dkt. No. 70 at 5. Plaintiff's procedural due process claims would also be barred by qualified immunity.

The Fourteenth Amendment's due process clause guarantees parents the right to a process that is fundamentally fair before having their children removed from their custody. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982). In contrast to the more nebulous "substantive due process" considerations, "there are bright lines when it comes to the procedural safeguards." *C.M.*, 672 F. Supp. 3d at 344 (quoting *Romero*, 937 F.3d at 521)) (addressing "the fuzzy continuum that governs due process" in the qualified immunity context). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Id.* (citations omitted).

Plaintiff has not sufficiently alleged he suffered any procedural violations implicating his constitutional parental rights <u>because</u> of the allegedly false documentation or withheld exculpatory evidence. These are more accurately characterized as substantive due process claims, which have been addressed above. Plaintiff has had multiple opportunities to tie a procedural due process violation regarding notice and opportunity to be heard to Green/Hemby but has failed to do so. This is not surprising because there is no plausible allegation that Green and Hemby are responsible for any family court's procedural safeguards.

**d. Fourteenth Amendment equal protection**

Plaintiff's operative pleading alleges DFPS discriminated against him through "unequal treatment." Dkt. No. 48-2 at 2. As discussed below, the allegations in Plaintiff's operative complaint, and his proposed allegations, fail to state a valid equal protective claim.

Put simply, the Equal Protection Clause of the Fourteenth Amendment directs states to treat all similarly situated persons alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state government can violate the Equal Protection Clause only by intentional discrimination. *Malone v. Loden*, No. 3:24CV312-JMV, 2026 WL 106379, at *6 (N.D. Miss. Jan. 14, 2026). To state a claim under the Equal Protection Clause, a plaintiff suing under § 1983 must allege that a state actor intentionally discriminated against him *because of his membership in a protected class*. *Id.* (citation omitted) (emphasis original).

The FAC fails to plausibly allege a denial of equal protection because Plaintiff does not allege sufficient facts to indicate he is a member of a protected class or facts showing a discriminatory intent on the part of DFPS or Hemby/Green. However, in his response, Plaintiff states he could amend to clarify that he is bringing a Fourteenth Amendment equal protection claim of gender-based discrimination based on DFPS' persistent bias favoring the mother and undermining the father's role. *See* Dkt. No. 70 at 5. Insofar as Plaintiff seeks leave to amend to do so, the Court assumes Plaintiff would seek to proceed as a "class of one."[12] *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (recognizing that equal protection claims can be brought by a "class of one," where the plaintiff alleges that he has been intentionally treated

[12] Plaintiff must bring a "class of one" because district courts appear to have come to the conclusion that the classification of either gender in a custody proceeding is not a member of a protected class. *Darian v. Cashe*, No. CV 17-52-JJB-EWD, 2017 WL 3326976, at *7 (M.D. La. July 17, 2017), *report and recommendation adopted sub nom.*, 2017 WL 3326755 (M.D. La. Aug. 2, 2017) (citing cases); *see also Fox v. County of Tulare*, 1:11-cv-0520, 2014 WL 3687735, at *13 (E.D. Ca. July 24, 2014).

differently from others similarly situated and that there is no rational basis for the difference in treatment).

Although such a plaintiff does not have to allege membership in a protected class or group, the plaintiff is required "to present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Kelley v. City of Wake Vill., Texas*, 264 F. App'x 437, 444 (5th Cir. 2008) (citation omitted). What is more, numerous courts have dismissed a "class of one" equal protection claim on a Rule 12(b)(6) motion to dismiss based on their finding that "the government's actions [were] rationally related to a legitimate government interest." *Henderson v. Bd. of Supervisors of S. Univ. & A&M Coll.*, 663 F. Supp. 3d 542, 576 (M.D. La. 2023) (citing cases).

Plaintiff's fundamental error in this claim is that he proposes to allege a general bias of DFPS as a whole rather than any specific gender bias of Green or Hemby, showing that his proposed claim is not a true individual capacity claim. Regardless, Plaintiff has failed to allege a *deliberate* deprivation for reasons of a *personal* nature. *See Wiley As next friend of C.S.B. v. Dunbar*, No. 6:20-CV-01059-ADA-JCM, 2021 WL 4622424, at *6 (W.D. Tex. July 28, 2021) (the plaintiff alleged DFPS was involved in a "conspiracy to break up black families" but did not provide evidence of discriminatory actions *toward him*). Plaintiff's proposed SAC also fails to plausibly allege there was no rational basis for any difference in treatment he was given as opposed to the treatment given to K. Hansel. For multiple reasons, even if Plaintiff's proposed SAC sufficiently alleges that Plaintiff's right to equal protection had been violated, which it does not, Green/Hemby would still be entitled to qualified immunity with respect to the substance of Plaintiff's equal protection claim.

**e. First Amendment**

Finally, Plaintiff argues his First Amendment rights were violated by Green/Hemby in retaliation for engaging in protected speech. Dkt No. 70 at 7 ("Defendants escalated their conduct immediately after I filed complaints with the DFPS Office of Consumer Relations and initiated this lawsuit. Within days of Kristen Hansel and DFPS responding to this lawsuit, DFPS received and began investigating yet another frivolous report from Kristen Hansel."). The operative complaint alleges Hemby retaliated against Plaintiff following his complaint to OCR about her investigation, which was handled locally by Green. Dkt. No. 48-2. In his proposed SAC, Plaintiff alleges his First Amendment rights were violated when Green/Hemby initiated false CPS investigations and filed baseless reports in retaliation against him for filing complaints. Dkt. No. 79 at 2, 6.

Plaintiff's proposed allegations—no matter their source—fall short of plausibly alleging that Green/Hemby violated a clearly established underlying First Amendment right under the facts of this case. *Villarreal v. City of Laredo, Tex.*, 17 F.4th 532, 542 n.1 (5th Cir. 2021) (holding "this circuit does not recognize" a retaliatory-investigation claim); *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999) ("[The plaintiff] has alleged only that she was the victim of criticism, an investigation (or an attempt to start one), and false accusations: all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence."); *see also J.T.H. v. Missouri Dep't of Soc. Servs. Children's Div.*, 39 F.4th 489, 493 (8th Cir. 2022) (in a case against a child-welfare investigator for allegedly retaliating against two parents for exercising their First Amendment rights, the Eighth Circuit stated it had never recognized a retaliatory-investigation claim of this kind, nor had other courts around the country, which have either rejected the possibility outright or concluded that the law is still in flux). "So even if there is a *general* right to

be free of retaliation, the law is not clearly established enough to cover the '*specific* context of the case': retaliatory *investigation*." *J.T.H.*, 39 F.4th at 493 (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (emphasis added in *J.T.H.*)). Because Plaintiff does not plausibly allege—or propose to allege—an underlying First Amendment violation clearly established under the facts of this case, Green/Hemby would be entitled to qualified immunity for any retaliatory-investigation claim.

The undersigned has concluded above that Green/Hemby would be entitled to qualified immunity with respect to each of the constitutional violations alleged (or proposed to be alleged) against them in their individual capacities. Plaintiff's failure to overcome Hemby and Green's qualified immunity as to those underlying claims is fatal to Plaintiff's § 1983 conspiracy claims.[13] *Young v. City of Irving*, No. 3:23-CV-1423-D, 2024 WL 4193936, at *11 (N.D. Tex. Sept. 12, 2024).

**4. Futility of amendment**

Here, it appears that Plaintiff has alleged his best case. Even if afforded another opportunity to amend, the Court lacks jurisdiction over Plaintiff's official capacity claims, any individual capacity claims against Green/Hemby are barred by qualified immunity, and he fails to state a claim for any other type of relief. Another opportunity to amend is therefore unwarranted. *Steele v. Unicon Grp.*, No. 3:19-CV-1679-N-BH, 2020 WL 5520610, at *13 (N.D. Tex. Aug. 10, 2020),

[13] Even if Plaintiff had sufficiently shown Green/Hemby are not entitled to qualified immunity, DFPS Defendants persuasively assert Plaintiff has not sufficiently stated a claim for conspiracy under § 1983. As explained below in the Court's analysis of K. Hansel's motion, Plaintiff's allegation that Hemby/Green and K. Hansel had several meeting of the minds "from 10/2024 to 11/2024" (Dkt. No. 48-2 at 3) is insufficient to plead a § 1983 conspiracy. Additionally, the bald allegation in the FAC and proposed SAC that "[v]ery early on, [Hemby and K. Hansel's] agreement to violate my [constitutional rights] was established" is not sufficient to state a plausible claim for relief. *See* Dkt. Nos. 48-1 at 2, 79-1 at 2. Because Plaintiff "fails to set forth specific allegations that [Hemby/Green and K. Hansel] agreed to commit an illegal act," Plaintiff's § 1983 conspiracy claim against Green/Hemby should be dismissed for failure to state a claim. *Blakely v. Andrade*, 360 F. Supp. 3d 453, 490 (N.D. Tex. 2019) (citation omitted)); *see also Laymance v. Taylor*, No. 6:19-CV-00045-JDK-JDL, 2019 WL 7405060, at *6 (E.D. Tex. Dec. 2, 2019) (stating the facts and "bald allegation" of a conspiracy did not support "the existence of a conspiracy to remove J.L. from Plaintiffs' custody in violation of their constitutional rights), *report and recommendation adopted*, 2020 WL 33017 (E.D. Tex. Jan. 2, 2020).

*report and recommendation adopted*, 2020 WL 5513439 (N.D. Tex. Sept. 11, 2020); *see also Dunsmore v. Muth*, 154 F.4th 360, 368–69 (5th Cir. 2025) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054–55 (5th Cir. 1998) (per curiam) (holding that any error in dismissing a *pro se* complaint without permitting amended pleadings is harmless "if the plaintiff has alleged his best case, or if the dismissal was without prejudice" (footnote omitted in *Dunsmore*)).

In sum, the undersigned recommends all of Plaintiff's claims against DFPS and Hemby and Green be dismissed without prejudice and without leave to amend.

## V. K. HANSEL'S MOTION

### A. Plaintiff's proposed claims

In his responsive briefing and proposed SAC, Plaintiff alleges K. Hansel conspired with DFPS personnel—such as Green, Hemby, and other, now dismissed, defendants—to fabricate abuse allegations, misrepresent drug test results, and provide perjured testimony, which were used in family court proceedings for K. Hansel to obtain multiple unlawful temporary restraining orders that deprived Plaintiff of custody in March-April 2020 (6 weeks), April-December 2021 (8 Weeks), July-August 2024 (4 weeks), and October 2024 (3 weeks). Dkt. No. 69 at 2. Specifically, Plaintiff alleges (or proposes to allege) a § 1983 conspiracy claim against K. Hansel for violations of the following constitutional rights: (1) **Fourth Amendment** (misrepresentations of drug tests leading directly to unjustified child seizures, particularly in April 2021 and October 2024) (Dkt. No. 69 at 4, Dkt. No. 79 at 5-6); (2) **Fourteenth Amendment procedural due process** (deliberately triggered child removals and restrictions without providing Plaintiff notice of meaningful hearing, "using misleading ex parte filings and false CPS allegations") (Dkt. No. 69 at 4, Dkt. No. 79 at 5-6); (3) **Fourteenth Amendment substantive due process** (repeated interference with Plaintiff's parental right to care for and control his children without legitimate justification or immediate

threat) (Dkt. No. 69 at 4, Dkt. No. 79 at 5-6); and (4) **First Amendment** (K. Hansel's retaliatory actions intensified after Plaintiff filed grievances and publicly criticized state actions) (Dkt. No. 69 at 4, Dkt. No. 79 at 5-6). Plaintiff also alleges K. Hansel coordinated with "DFPS agents, school officials, and medical providers" to deprive Plaintiff of constitutional rights through fabricated abuse allegations in violation of **42 U.S.C. §§ 1985(3), 1986**. Dkt. No. 69 at 5.

Plaintiff's proposed SAC supports these claims by focusing on events at two different time periods: 2020-21 and 2024. Regarding 2020-21, K. Hansel provided DFPS a misleading physician's report from pediatrician Spraggins in March 2020, contributing to DFPS beginning a CPS investigation which ended in April 2020. Dkt. No. 79-3 at 2, 5. The investigation determined there was reason to believe there had been abuse, which never happened. *Id.* at 5-6 (stating this "set up" Plaintiff for the numerous frivolous allegations that followed). On April 4, 2021, K. Hansel used her DFPS position in conjunction with egregious false reports of domestic violence, abuse, and mental health issues to mislead police into performing a forced removal of the children from Plaintiff during his custodial time. *Id.* at 7. Plaintiff had no contact with his children for over eight months, until December 2021, which "was undoubtably the most emotionally distressful time period of [his] life." *Id.* at 8. Plaintiff began supervised visits with his children in December 2021 and was able to spend unsupervised time with his children in 2022 and 2023. *Id.* at 10.

Regarding the 2024 time frame, Plaintiff took a trip with the children to Florida around June 2024. *Id.* Sometime after, K. Hansel told Plaintiff she was going to pull him back into custody litigation due to her belief that he had violated an agreement by meeting with her mother on the trip. *Id.* K. Hansel filed her first motion for temporary restraining order (TRO#1) on July 19, 2024, seeking to revoke all of Plaintiff's standard custodial time. Plaintiff alleges TRO#1 contained

"frivolous allegations, which gained support from the court at first glance, and put [Plaintiff] back to only supervised and limited visitation with [his] children." *Id.* at 10-11.

Plaintiff alleges he "beat the frivolous allegations and was able to regain normal custody" on August 15, 2024. *Id.* at 11. However, Plaintiff then asserts that in October 2024, K. Hansel forced their 13-year old son to take a ChildGuard hair test, which is an IUO (Investigative Use Only) test commonly used by CPS. Based on the misleading results from the drug test, K. Hansel then filed for TRO#2, causing Plaintiff to be completely restricted from interacting with his children until October 31, 2024. *Id.* at 11-13.

**B. K. Hansel's assertions and analysis**

Pursuant to Rule 12(b)(1), K. Hansel asserts the Court has no subject matter jurisdiction over Plaintiff's claims. Relying on her attached declaration regarding her former employment with DFPS, K. Hansel first asserts any official capacity claims related to her prior relationship with DFPS, a state agency protected by Eleventh Amendment immunity, would "strip this court of subject-matter jurisdiction under the doctrine of Sovereign Immunity." Dkt. No. 59 at 8, 11 (asserting suits against employees of state agencies in their official capacities run afoul of the Eleventh Amendment). K. Hansel next argues any claims against her—whether in her official capacity or individual capacity—would be barred by sovereign immunity and should be dismissed based on Plaintiff's inability to "prove that Ms. Hansel is or remained a state actor after separating from DFPS in September 2022."[14] *Id.* at 13-14. Under this theory, all of Plaintiff's § 1983 claims should be dismissed for lack of subject matter jurisdiction because K. "Hansel's only ties to the

[14] This declaration arguably converts K. Hansel's motion to a factual attack on the merits of the jurisdictional claim. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). While Plaintiff states K. Hansel falsely and deceptively presented herself as continuing to work for DFPS during the later years of the alleged conspiracy, he implicitly concedes she eventually left DFPS and presents nothing to suggest that employment in fact ended some time other than 2022. *See* Dkt. No. 87 at 5-7. Based on K. Hansel's unchallenged representations in her briefing that she stopped working for DFPS in 2022, the undersigned does not need to rely on K. Hansel's declaration to accept that was her departure date for this analysis.

requirement that she be a 'state actor' involves a Texas department that is protected by the doctrine of Sovereign Immunity." *Id.* at 15. Finally, in her reply, K. Hansel argues the Court lacks subject matter jurisdiction because Plaintiff's claim is barred by the statute of limitations. Dkt. No. 84 at 2-4.

Assuming the Court has subject matter jurisdiction, K. Hansel argues Plaintiff's claims against her—in both her official and individual capacities—should be dismissed with prejudice pursuant to Rule 12(b)(6). Specifically, K. Hansel argues as follows: (1) Plaintiff's claims are barred—in whole or in part—by the applicable statute of limitations (Dkt. No. 59 at 8, 14-15); (2) for any claims against K. Hansel in her official capacity not barred by limitations, Plaintiff fails to plead facts sufficient to show (a) a policymaker or a policy or custom that was the moving force behind the alleged constitution violations, a required for a *Monell* claim (*id.* at 16-17), or (b) that those claims should be dismissed as redundant to those already asserted against DFPS (*id.* at 17); and (3) for any claims against K. Hansel in her individual capacity not barred by limitations, Plaintiff fails to plead facts sufficient to show K. Hansel was a state actor to support a plausible claim under § 1983 (*id.* at 8, 14-15), or that she violated one of Plaintiff's constitutional rights.

As explained below, (1) any of Plaintiff's claims against K. Hansel in her official capacity should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) due to Eleventh Amendment immunity and on the merits under Rule 12(b)(6) due to Plaintiff's failure to allege any facts supporting a *Monell* claim;[15] (2) Plaintiff's § 1983 claims against K. Hansel in her

[15] Section 1983 claims against a governmental entity based on the customs and policies of that entity are commonly referred to as *Monell* claims. *Miles v. Port Arthur ISD*, 772 F. Supp. 3d 770, 781–82 (E.D. Tex. 2025). "To establish municipal liability, a plaintiff must show '(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom).'" *Id.* (citations omitted). "More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a "'moving force'" behind the deprivation. . .; thus, in an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

individual capacity should be dismissed pursuant to Rule 12(b)(6) because the 2020-21 events are barred by the statute of limitations and K. Hansel was not acting under color of state law for the 2024 events; (3) Plaintiff's remaining conspiracy claims under §§ 1985(3) and 1986 should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. This disposes of Plaintiff's case against K. Hansel, and the undersigned need not reach her other arguments.

**1. Any official capacity claims against K. Hansel should be dismissed under Rules 12(b)(1) and 12(b)(6)**

Plaintiff's claims against K. Hansel concern the actions she took in her custody battle over their shared children rather than any action she took on behalf of DFPS. Accordingly, his claims against her are based on her individual capacity.[16] *See Lumbreras v. Roberts*, 319 F. Supp. 2d 1191, 1203 (D. Or. 2004), *aff'd*, 156 F. App'x 952 (9th Cir. 2005) (finding the complaint, when read in full, clearly alleged loss caused by the defendants' individual conduct and sought monetary damages for said loss). However, Plaintiff appears to salvage any official capacity claim against K. Hansel: Plaintiff checked both "individual capacity" and "official capacity" boxes next to K. Hansel's name in his operative complaint, and his briefing states he (only) "primarily" brings individual capacity claims against K. Hansel, suggesting "secondary" official capacity claims against her as well. Dkt. No. 69 at 3.

While there have been no facts alleged that would support an official capacity claim against K. Hansel, any such claim would be barred by the Eleventh Amendment, for similar reasons they are barred against DFPS employees Green and Hemby discussed above. The Eleventh Amendment

[16] Official capacity suits seek to recover damages from the state treasury for losses caused by state custom or policy. *Lumbreras v. Roberts*, 319 F. Supp. 2d 1191, 1202-03 (D. Or. 2004), *aff'd*, 156 F. App'x 952 (9th Cir. 2005) (citing *Hafer*, 502 U.S. at 25). That is, official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 1203 (quoting *Kentucky*, 473 U.S. at 165 (citation omitted in *Lumbreras*)). "Personal-capacity suits, on the other hand, seek to impose *individual liability* upon a government officer for actions taken under color of state law." *Id.* (quoting *Hafer*, 502 U.S. at 25 (emphasis added in *Lumbreras*)).

bar applies not only to the state itself but also protects state actors in their official capacities. *LeBlanc*, 627 F.3d at 124 (citing *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 320 (2008)). Therefore, to the extent Plaintiff sues K. Hansel for actions taken in her official capacity as an employee of DFPS, such claims should be dismissed under Rule 12(b)(1).[17]

Any remaining official capacity claims against K. Hansel, for actions taken outside her official capacity as an employee of DFPS, should be dismissed pursuant to Rule 12(b)(6). To state an official capacity claim, Plaintiff would need to allege an "official policy," "policymaker," and "violation of constitutional right" whose "moving force" is the policy. *Miles v. Port Arthur ISD*, 772 F. Supp. 3d 770, 782 (E.D. Tex. 2025). However, Plaintiff never addresses K. Hansel's challenge to Plaintiff's failure to allege these essential elements for municipal liability under § 1983, effectively conceding there are no facts to support any such claim. Dkt. No. 59 at 16.

**2. Plaintiff's § 1983 claims against K. Hansel in her individual capacity should be dismissed pursuant to Rule 12(b)(6)**

**a. Plaintiff's claims for violations of his parental rights in 2020 and 2021 are time-barred**

Plaintiff's claims against K. Hansel in her individual capacity concerning 2020-21 events are time-barred by the applicable two-year statute of limitations. "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)). Although § 1983 and § 1985 do not have a listed statute of limitation,

[17] Contrary to K. Hansel's assertion, this finding does not strip the Court of subject matter jurisdiction over any properly pleaded *individual* capacity claims which Plaintiff might assert against K. Hansel. *See Thomas v. Texas Dep't of Fam. & Protective Servs.*, 427 F. App'x 309, 313 (5th Cir. 2011) (finding the district court properly dismissed the claims against DFPS and official capacity claims against DFPS employees pursuant to Eleventh Amendment immunity; refusing to accept the district court's justification for dismissal of all of the individual capacity claims against DFPS employee Collins; and noting the federal court had jurisdiction over properly pleaded constitutional claims).

the Fifth Circuit has instructed courts to borrow the appropriate state's general personal injury statute of limitations when construing § 1983 and § 1985.[18] *Wiley*, 2021 WL 4622424, at *3 (citing *Rotella v. Pederson*, 11 F.3d 892, 897 (5th Cir. 1998)). In Texas, the applicable statute of limitations for personal tort claims is two years. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a)).

Absent tolling, the limitations period runs from the moment a plaintiff's claim "accrues," and while courts borrow the limitations period from state law, "the particular accrual date of a federal cause of action is a matter of federal law." *King-White*, 803 F.3d at 762 (quoting *Frame v. City of Arlington*, 657 F.3d 215, 238 (5th Cir. 2011)). Accrual begins <u>when a plaintiff is aware that he has been injured</u> or has sufficient information to know as much. *Hearn v. McCraw*, 856 F. App'x 493, 495–96 (5th Cir. 2021) (citations omitted) (emphasis added). Here, the 2021 events accrued sometime between the date they occurred in 2020 and the alleged harm they caused, which is no later than Plaintiff losing custody from April-December of 2021. Thus, suit claiming injury from those events would have needed to have been brought no later than December 2023.

Plaintiff does not seriously dispute that, standing alone, the 2020-21 events were time-barred by the time Plaintiff filed his original complaint on May 13, 2025. Rather, Plaintiff states the continuing violation doctrine, which is typically applied in employment discrimination cases, saves those claims. Dkt. No. 69 at 3; Dkt. No. 87 at 1-4. Plaintiff is mistaken.

"[T]he continuing violation doctrine extends the limitations period when a violation manifests itself over time, rather than as discrete acts." *Hearn*, 856 F. App'x at 496 (explaining the continuing violation doctrine is simply a federal doctrine governing accrual of an action in certain circumstances and that in those limited circumstances—not present in *Hearn*—a claim will accrue

[18] The statute of limitation for § 1986 is one year. *Wiley As next friend of C.S.B. v. Dunbar*, No. 6:20-CV-01059-ADA-JCM, 2021 WL 4622424, at *3 (W.D. Tex. July 28, 2021) (citing 42 U.S.C. § 1986).

within the limitations period so long as the plaintiff can show that some of the "continuous conduct" occurred within the limitations period) (citation omitted); *see also Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008) (Although the name of the doctrine may sound auspicious for late-filing plaintiffs, it does not allow a plaintiff to avoid filing suit so long as some person continues to violate his rights. "The 'continuing violation' doctrine is misnamed. . . . The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought."). A plaintiff cannot use the continuing violation theory "to resurrect claims about discrimination [or in this case due process] concluded in the past, even though its effects persist." *Gates v. Texas Dep't of Fam. & Protective Servs.*, No. A-09-CV-018-LY-RP, 2010 WL 11597987, at *5 (W.D. Tex. May 4, 2010), *report and recommendation adopted*, 2010 WL 11598084 (W.D. Tex. May 25, 2010). Courts must be careful not to confuse continuous violations with a single violation followed by continuing consequences; only continuous unlawful acts can form the basis of a continuous violation. *Id.* (citation and quotation marks omitted).

Here, Plaintiff confuses continued harm with continued violations. *Id.* The events surrounding the alleged custody losses in March-April 2020 and April-December 2021 all took place prior to those custody losses. Plaintiff was aware of those events during those timeframes, and that awareness would "in fairness and logic. . . have alerted the average lay person to act to protect his rights." *Id.* While Plaintiff points to numerous additional grievances that took place in later years—grievances which surrounded the custody losses in 2024—those were not caused by the 2020-21 events; rather, they amount to separate alleged violations of § 1983.

Construing his arguments broadly, Plaintiff may also claim fraudulent concealment as a defense to the statute of limitations: Plaintiff alleges that K. Hansel falsely and deceptively mislead

him regarding her employment with DFPS, apparently leading him to believe she was still employed for "several years" after these events. Dkt. No. 79-1 at 3; *see also* Dkt. No. 87 at 4-6 (asserting that K. Hansel, after leaving DFPS, "falsely claimed to still work there"). However, this would not raise any issue of fraudulent concealment, for two reasons. First, Plaintiff does not allege or propose to allege fraudulent concealment with particularity. *See Stringer v. Remington Arms Co., L.L.C.*, 52 F.4th 660, 662 (5th Cir. 2022) (stating the Fifth Circuit has previously found that Federal Rule of Civil Procedure 9(b), which requires that the elements of fraud be pleaded with particularity, applies in fraudulent concealment cases). Second, and more fundamentally, Plaintiff's proposed allegations, liberally construed, suggest that K. Hansel concealed, at most, that she stopped working for DFPS in 2022. That is, she was concealing her employment status, not the fact that Plaintiff lost custody of his children in 2020-21, which is the alleged "wrong." *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 847 (S.D. Tex. 2018) (fraudulent concealment concerns concealing the alleged "wrong").

Plaintiff's claims as to the alleged losses of parental rights in 2020 and 2021, therefore, having been filed well past the two-year statutory deadline, are time-barred and should be dismissed with prejudice on the basis of the statute of limitations.

**b. Plaintiff fails to sufficiently allege K. Hansel was a state actor to support a plausible claim under § 1983 for violations of his parental rights in 2024**

Section 1983 creates a private right of action to redress violations of federal law, such as the Fourteenth Amendment, perpetrated by those acting under color of state law.[19] *Colson v. Grohman*, 174 F.3d 498, 504 n. 2 (5th Cir. 1999). K. Hansel persuasively asserts Plaintiff fails to

[19] The Supreme Court has made clear that if a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, "that conduct [is] also action under color of state law and will support a suit under § 1983." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted) (In such circumstances, the defendant's alleged infringement of the plaintiff's federal rights is "fairly attributable to the State.").

allege sufficient facts to plausibly allege she acted under color of state law. As explained below, (1) Plaintiff fails to sufficiently allege K. Hansel acted under color of state law in 2024 by virtue of her former employment with DFPS, which ended in 2022; and (2) Plaintiff fails to sufficiently allege that K. Hansel, as a private person, entered into an agreement with a state actor to commit an illegal act; thus, this is not one of those rare instances where a private party will be considered a state actor for § 1983 purposes.

"The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West*, 487 U.S. at 49 (citations omitted). "[S]tate employment is generally sufficient to render the defendant a state actor." *Id.* (citation omitted). Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law. *Id.* at 50 (citations omitted). However, state action exists "only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum*, 457 U.S. at 1004 (emphasis original) ("our precedents indicate that a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State").

Construing the allegations in Plaintiff's operative and proposed complaints as liberally as possible, K. Hansel's actions, while a DFPS employee, in 2020-21 were not related to actions taken by K. Hansel in her official capacity as a DFPS employee, or while exercising responsibilities pursuant to state law. Rather, K. Hansel, as a mother, filed reports about—or participated in investigations related to—her former spouse in relation to the ongoing dispute regarding custody of their children. *See* Dkt. No. 59 at 7, 13, 15 (stating K. Hansel "went through the process of filing

a report to DFPS just as any other individual would"). The undersigned simply cannot say that the state would be "*responsible*" for the specific conduct of which Plaintiff complains prior to September 2022, conduct which the Court has also found is time-barred. *See Blum*, 457 U.S. at 1004.

Plaintiff's claims concerning K. Hansel's activity after she left DFPS employment are also problematic. Plaintiff argues K. Hansel—as a private individual after leaving DFPS—collaborated with state actors (DFPS investigators) in 2024 and thus engaged in state action. Dkt. No. 69 at 3. K. Hansel's actions are even further removed from DFPS at this point. Further, to make such a claim actionable, the private and the public actors must have entered into an agreement to commit an illegal act, and a plaintiff's constitutional rights must have been violated. *Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008) (citation omitted). A plaintiff must "allege specific facts to show an agreement." *Id.* (quoting *Priester*, 354 F.3d at 421). In pleading these specific facts, plaintiffs must allege the operative facts of the alleged conspiracy. *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987). "Bald allegations that a conspiracy existed are insufficient." *Id.* "A private party will be considered a state actor for § 1983 purposes only in rare circumstances." *Barrera v. LDG Riverstone LP*, No. 1:25-CV-01487-ADA-DH, 2025 WL 3654178, at *3 (W.D. Tex. Dec. 9, 2025), *report and recommendation adopted*, 2026 WL 374926 (W.D. Tex. Feb. 5, 2026) (quoting *Gordon v. Neugebauer*, 57 F. Supp. 3d 766, 773 (N.D. Tex. 2014)). This is not one of those rare circumstances.

Plaintiff's operative complaint alleges K. Hansel, the "primary Defendant with intent to violate Plaintiff's rights," had "direct contact" with nearly all the Defendants, "forming agreements to violate the Plaintiff's civil rights." Dkt. No. 48-1 at 2. According to Plaintiff, K. Hansel took advantage of her previous employment and close relationship with DFPS and provided "false and

misleading statements to DFPS" and others who were "capable of aiding in the conspiracy to violate [his] rights." *Id.* at 3 (further alleging K. Hansel received protection from DFPS allowing her to continue to make false reports). Plaintiff alleges multiple retaliatory acts took place over the years with the "aid of the concrete alliance between Kristen and DFPS, notably with Ruth Pope and the compliance seen with the concealment of Kristen's information by [Hemby]." *Id.*

Even construed as liberally as possible, Plaintiff's operative complaint fails to plead specific facts to demonstrate the operative facts of the alleged conspiracy to remove Plaintiff's children from Plaintiff's custody in 2024. A finding that Plaintiff successfully pleaded that K. Hansel falsified reports is insufficient, because Plaintiff fails to allege (or propose to allege) any operative facts showing DFPS employees Hemby and Green (the only state actors whose conduct surrounds the alleged losses of parental rights in 2024) acted in agreement to commit an illegal act. *See Tebo*, 550 F.3d at 497 (affirming district court's grant of summary judgment on plaintiff's conspiracy claim, where plaintiff alleged no facts showing defendants acted in agreement to commit an illegal act); *Blakely v. Andrade*, 360 F. Supp. 3d 453, 490 (N.D. Tex. 2019) (recommending dismissal at screening on plaintiff's conspiracy claim, where did not demonstrate defendants agreed to commit an unlawful act). At most, Plaintiff's allegations state "DFPS employees" were *capable* of aiding in a conspiracy. Plaintiff does not allege specific facts to show K. Hansel actually had an agreement with Green/Hemby to commit an illegal act.[20]

Plaintiff's conclusory allegation that Hemby and K. Hansel had a meeting of the minds in early October 2024 (Dkt. No. 48-2 at 4) is insufficient to plead a § 1983 conspiracy. The proposed factual allegations in the SAC still do not support the existence of a conspiracy to remove

[20] Such allegations would need to include more than the fact that DFPS was investigating the Hansels during a CPS investigation—otherwise, *every* investigation could be an alleged conspiracy that would survive a motion to dismiss.

Plaintiff's children from Plaintiffs' custody in violation of Plaintiff's constitutional rights. *See Laymance v. Taylor*, No. 6:19-CV-00045-JDK-JDL, 2019 WL 7405060, at *6 (E.D. Tex. Dec. 2, 2019), *report and recommendation adopted*, 2020 WL 33017 (E.D. Tex. Jan. 2, 2020). The bald allegation in the proposed SAC—that "[v]ery early on, [Hemby and K. Hansel's] agreement to violate my [constitutional rights] was established" (Dkt. No. 79-1 at 2)—is not sufficient to state a plausible conspiracy claim. Because Plaintiff "fails to set forth specific allegations that [Hemby/Green and K. Hansel] agreed to commit an illegal act," Plaintiff has not sufficiently alleged (or proposed to allege) that private actor K. Hansel conspired with a state actor or any facts showing state action. The undersigned is mindful of Plaintiff's *pro se* status. However, Plaintiff has been given multiple opportunities to put forth a legally sufficient claim, and the Court cannot allow an ongoing process of amending without hope. Liberally construing all of Plaintiff's proposed allegations, none of the allegations support finding state action here.

Finding any further amendment would be futile, the undersigned recommends the Court dismiss Plaintiff's § 1983 conspiracy claims against K. Hansel in her individual capacity with prejudice pursuant to Rule 12(b)(6). *Barrera*, 2025 WL 3654178, at *3 ("Because Barrera has failed to plausibly allege that Defendants conspired with state actors to violate her rights under the FHA and the Fourteenth Amendment, she has failed to state any claims under Section 1983.").

**3. Plaintiff's remaining conspiracy claims under §§ 1985(3), 1986 should be dismissed pursuant to Rule 12(b)(6)**

Plaintiff's claims for conspiracy to deprive civil rights under 42 U.S.C. §§ 1985(3) and 1986 (Dkt. No. 48 at 3; Dkt. No. 69 at 5) should be dismissed as well.

First, to prove a § 1985 conspiracy between the state or its agents and a private party under § 1983, the plaintiff must show an agreement or "meeting of the minds" by the defendants to violate his constitutional rights. *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1181 (9th Cir. 1989)

(citation omitted); *see also Adickes*, 398 U.S. at 152. As held above, Plaintiff's allegations and proposed allegations wholly fail in this regard.

Second, the Fifth Circuit has held that "'the only conspiracies actionable under section 1985(3) are those motivated by racial animus.'" *Cantú v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019) (quoting *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987)). Because Plaintiff fails to allege (nor proposes to allege) any racial animus on the part of K. Hansel, his § 1985(3) claim fails. *See Golz v. Williamson Cnty., Texas*, No. 1:25-CV-01956-ADA, 2026 WL 297632, at *7 (W.D. Tex. Feb. 2, 2026).

Finally, any claim under § 1986 fails because it is dependent on a plaintiff's successful pleading of a § 1985 claim first. *Kerns*, 2025 WL 2946094, at *13. Plaintiff thus cannot establish a violation of 42 U.S.C. §§ 1985 and 1986.

Because Plaintiff's FAC fails to plausibly state conspiracy claims under §§ 1985(3) and 1986, and because further amendment would be futile, the undersigned recommends the Court dismiss Plaintiff's claims under §§ 1985(3) and 1986 claims against K. Hansel in her individual capacity with prejudice.

**E. K. Hansel's request for attorney's fees and costs**

K. Hansel states she is entitled to an award of attorney's fees and costs from Plaintiff. Dkt. No. 59 at 22. According to K. Hansel, Plaintiff's claims are "frivolous and unreasonable as Plaintiff is aware that Defendant is no longer a state actor and that if she were, this claim would not be able to be brought in a federal court." *Id.* K. Hansel requests the Court allow evidence in later briefing as to the amount of reasonable fees and costs incurred defending Plaintiff's claims. *Id.* In response, Plaintiff asserts his "detailed allegations" are supported by facts and precedent and were made in "good faith." Dkt. No. 69 at 5.

The general rule in the American legal system is that each party must pay its own attorneys' fees and expenses. *Perkins v. Hart*, No. CV 21-879, 2024 WL 3755238, at *8 (E.D. La. June 28, 2024), *report and recommendation adopted*, 2024 WL 3742743 (E.D. La. Aug. 7, 2024) (citation omitted). In order to ensure that certain federal rights are adequately enforced, Congress enacted 42 U.S.C. § 1988, which provides that a prevailing party in certain civil rights actions, including § 1983 actions, may recover "a reasonable attorney's fee as part of the costs." *Id.* (quoting 42 U.S.C. § 1988(b)). A prevailing defendant may be awarded fees where the plaintiff's action was "frivolous, unreasonable, or without foundation." *Alexander v. Trump*, 753 F. App'x 201, 209 (5th Cir. 2018) (quoting *Walker v. City of Bogalusa*, 168 F.3d 237, 240 (5th Cir. 1999) (quoting *White v. S. Park Indep. Sch. Dist.*, 693 F.2d 1163, 1169-70 (5th Cir. 1982))). The Fifth Circuit has held that a defendant is the prevailing party for the purposes of § 1988 when it receives a dismissal with prejudice. *Id.* (citing *Anthony v. Marion Cty. Gen. Hosp.*, 617 F.2d 1164, 1169-70 (5th Cir. 1980)). And "[a] suit is frivolous if it is 'so lacking in arguable merit as to be groundless or without foundation.'" *Id.* (quoting *Walker*, 168 F.3d at 240 (quoting *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1140 (5th Cir. 1983))).

K. Hansel would be a prevailing party if the Court adopts this Report and Recommendation. However, success alone is insufficient to support a fee award to a defendant. *Perkins*, 2024 WL 3755238, at *10. Granting a defendant's motion to dismiss is not, in and of itself, sufficient to support a finding of frivolousness, because "even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Lewis v. Smith*, No. CV 18-4776, 2019 WL 4521422, at *3 (E.D. La. Sept. 19, 2019) (quoting *Christiansburg Garment Co. v. Equal Emp. Opportunity Comm'n*, 434 U.S. 412, 422 (1978)).

Considering Plaintiff's *pro se* status and the complexities of the law, this case does not warrant an award of attorney's fees and costs. *Tannehill v. Tannehill*, No. 1:18-CV-00242, 2019 WL 847946, at *10 (W.D. La. Jan. 23, 2019), *report and recommendation adopted*, 2019 WL 847445 (W.D. La. Feb. 21, 2019). Although there are both logical and legal problems with Plaintiff's theories, the undersigned does not find the arguments entirely frivolous, unreasonable, or without foundation. Therefore, K. Hansel's request for attorney's fees and costs should be denied.

## VI. SPRAGGINS' MOTION

### A. Plaintiff's proposed claims

Plaintiff's overarching theory is that his Fourteenth Amendment due process parental rights were violated by pediatrician Spraggins' conspiracy with K. Hansel, and possibly other DFPS agents, that were at Spraggins' office in 2020, in violation of 42 U.S.C. §§ 1983, 1985, and 1986. Dkt. No. 51 at 5, 8-9. According to Plaintiff, Spraggins' alleged parts in the conspiracy were as follows: (1) Spraggins regularly recorded false medical/diagnosis information (specifically, the false diagnosis of Acute Pharyngitis, or sore throat), "even when contested with factual information," with knowledge that it would be "directly used in DFPS investigation(s), and in agreement to the conspiracy against [Plaintiff's] rights") (*id*. at 6-7); (2) Spraggins directly assisted in the DFPS investigation, and such assistance was "clearly meant" to benefit K. Hansel's DFPS case where K. Hansel was evidenced to still have DFPS authority beyond a normal citizen (*id.*); and (3) Spraggins testified at court hearings in December 2024 and May 2025. *Id*. at 6-7, 10-11; *see also* Dkt. No. 79 at 5 (proposing to allege that the character attack in judicial testimony by Spraggins was in retaliation for Plaintiff's having exercised his right to free speech, including filing complaints with the Texas Board of Nursing).

Plaintiff's proposed SAC provides additional detail as to the operative facts underlying Plaintiff's claims. The allegations regarding Spraggins fall into two relevant timeframes, March 2020 and 2024-2025. The allegations regarding the March 2020 timeframe are as follows:

On March 12, 2020, K. Hansel sent police to Plaintiff's home with a misleading report that Plaintiff "forced legos down my 8-year-old son's throat." Dkt. No. 79-3 at 2. On March 13, 2020, K. Hansel picked up the older son from school and brought him to Spraggins who documented the event from the night before "with this false narrative provided by Kristen" and diagnosed the son with "Acute Pharyngitis" (sore throat). *Id.* This report was released to CPS with focus on "Acute Pharyngitis" to distort the reader into believing the diagnosis was something more severe. *Id.* The report was withheld from Plaintiff even though he asked Spraggins for it multiple times, which tells Plaintiff that "she is aware of the damages she caused with it." *Id.*

According to Plaintiff, Tina Harris, a Denton DFPS supervisor and close friend of K. Hansel, contacted the DFPS investigator who had interviewed K. Hansel and the older son outside of Spraggins' office, "telling her to cease the investigation so Haley Koren could take over." *Id.* at 3. Plaintiff alleges Haley Koren later went to Spraggins' office to collect the medical documentation of the event that was "narrated by Kristen for [Spraggins] to record." *Id.* at 4.

The allegations regarding the 2024 through 2025 timeframe are as follows:

Plaintiff had an appointment to bring his younger son to Spraggins on October 10, 2024, to discuss the medication Spraggins had put him on during TRO#1. *Id.* at 12. Because K. Hansel had filed for a second TRO, Plaintiff was not permitted to bring the younger son to the appointment, even though TRO#2 had not yet been signed. *Id.* Plaintiff met with Spraggins anyway and told Spraggins that K. Hansel had likely lodged another false allegation against Plaintiff. *Id.*

During another DFPS case around this time, K. Hansel told Hemby that she was pursuing Spraggins "as a complicit witness to provide false expert testimony in court." *Id.* at 15-16.

Spraggins provided "complicit" witness testimony at two hearings: December 11, 2024 and May 6, 2025. *Id.* at 17-18. At the December 2024 hearing, Spraggins provided "complicit testimony" that directly contradicted a toxicology report brought by Plaintiff from a doctor who was actually an expert on ChildGuard tests. *Id.* at 17. At the May 2025 hearing, Spraggins was called—not as an "expert witness"—but "to falsely report threats made to her from [Plaintiff]. . . that caused her to call the police while she assessed [Plaintiff's] son on 4/22 against [Plaintiff's] wishes."[21] *Id.* at 18. Plaintiff alleges Spraggins' actions as a "complicit witness" must waive her immunity as an expert witness. *Id.*

**B. Spraggins' assertions**

Pursuant to Rule 12(b)(1), K. Hansel asserts two reasons why the Court has no subject matter jurisdiction over Plaintiff's claims. Spraggins asserts Plaintiff's claims grounded in § 1983 fail because she is not a state actor; thus, there is no subject matter jurisdiction. Dkt. No. 50 at 5-10. Additionally, Spraggins asserts she is immune from liability under § 1983 to the extent Plaintiff's claims are based upon alleged perjured witness testimony at judicial hearings; thus, there is no subject matter jurisdiction over those claims. *Id.* at 10.

Assuming the Court has subject matter jurisdiction, Spraggins argues Plaintiff's claims against her—in both her official and individual capacities—should be dismissed with prejudice pursuant to Rule 12(b)(6). Specifically, Spraggins argues Plaintiff fails to state a claim under § 1983 because Plaintiff fails to sufficiently allege: (1) Spraggins was a state actor; (2) Plaintiff was deprived of an underlying constitutional or statutory right; and (3) causation. *Id.* at 11-17.

[21] Plaintiff states he never threatened to report Spraggins to the Texas Board of Nursing; rather, he simply informed Spraggins that he had already reported her, in light of the information he had received. Dkt. No. 79-3 at 18.

Additionally, to the extent Plaintiff seeks to assert claims based upon acts over two years prior to the service of the complaint, Spraggins contends those claims are barred by the applicable statute of limitations. *Id.* at 18-22.

As explained below, to the extent Plaintiff's claims against Spraggins arise out of witness testimony Spraggins provided in the underlying state custody proceeding, those claims should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) on immunity grounds. The remainder of Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6).[22] Because the determination is critical to the analysis, the Court must first determine in what capacity or capacities Plaintiff sues Spraggins.

**C. Spraggins is sued in her individual capacity and not in any official capacity**

In drafting his operative complaint, Plaintiff placed a check mark next to the "official capacity" box and <u>did not</u> check the "individual capacity" box, indicating he seeks to name Spraggins in her "official capacity as a family pediatrician." Dkt. No. 48 at 3-4. However, Plaintiff appears not to have understood the implication of checking the official capacity box.

As noted above, a § 1983 suit against a public employee in her official capacity is merely suit against the public employer. Here, Plaintiff has not alleged that pediatrician Spraggins is anything other than a private doctor. He does not allege she is contracted to provide health care services through a governmental contract. Nor has he alleged any policy, custom, or official action of any governmental healthcare provider for which Spraggins might work which allegedly caused

[22] Spraggins' Rule 12(b)(1) challenge to whether Plaintiff has sufficiently pleaded she is a "state actor" (Dkt. No. 50 at 5-10) is essentially an attack on the merits. Rather than consider the challenge under Rule 12(b)(1), the proper course is to consider the challenge on the merits under Rule 12(b)(6). *See Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981) ("Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court (assuming that the plaintiff's federal claim is not immaterial and made solely for the purpose of obtaining federal jurisdiction and is not insubstantial and frivolous) is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.").

his injuries. *See Pickett v. Williams*, No. 23-CV-1411, 2023 WL 3044589, at *3 (E.D. Pa. Apr. 21, 2023) (stating that to the extent the *pro se* plaintiff's claims for money damages were asserted against employees of a prison contract provider of medical services in their "official capacities," such claims were not cognizable because that contract provider was a private entity and further noting that even if official capacity suits against individuals who work for private companies were cognizable, the suit would, in effect, be one against the company for whom that individual works, an entity which the plaintiff had not attempted to name); *see also Burk v. West*, No. 21-4968, 2021 WL 5758945, at *2 (E.D. Pa. Nov. 24, 2021) (holding that official capacity claims against employees of private employer were not cognizable because they are essentially claims against their private employer).

Considering Plaintiff's pleadings as liberally as possible, and further considering Plaintiff is representing himself, the undersigned reads Plaintiff's complaints, and responsive briefing, as seeking monetary damages for alleged loss of parental rights caused by Spraggins' individual conduct rather than any alleged conduct as a public employee in her official capacity. *See Lumbreras*, 319 F. Supp. 2d at 1203.

**D. Plaintiff's claims pertaining to Spraggins' witness testimony should be dismissed under Rule 12(b)(1)**

The crux of Spraggins' Rule 12(b)(1) motion is that she has absolute immunity from Plaintiff's § 1983 claims based upon her testimony as a witness at the December 2024 and May 2025 judicial hearings. *See* Dkt. No. 50 at 10-11, 17-18. In an appendix attached in support of her Rule 12(b)(1) motion, Spraggins attached the Declaration of Whitney Spraggins ("Spraggins Decl.") (Dkt. No. 50-1 at 4-6) and a copy of the docket in "*In the Matter of the Marriage of Kristen Marie Hansel and Brett Steven Hansel and In the Interest of. . . the Children*" (Cause No. 19-9035-

211), showing subpoenas were issued by K. Hansel to Spraggins in December 2024 and May 2025.[23] *Id.* at 9-14.

According to her declaration, Spraggins is a nurse practitioner in pediatrics working at Preferred Pediatrics Primacy Care. Spraggins Decl., ¶ 3 (Dkt. No. 50-1 at 4). During the time period of 10/10/2024 through 12/11/2024, Spraggins was the children's primary care practitioner, and she remains the children's practitioner. As the children's practitioner, Spraggins has communicated with both Plaintiff and K. Hansel regarding the children. *Id.*, ¶ 4 (Dkt. No. 50-1 at 5). Spraggins has provided/made available the children's medical records to both Plaintiff and K. Hansel and provided testimony and medical records at the December 2024 hearing pursuant to a subpoena served upon her by K. Hansel's attorney. *Id.*, ¶ 5 (Dkt. No. 50-1 at 5).

To the extent Plaintiff's § 1983 claims are based upon Spraggins' testimony at court hearings related to the underlying custody matter in state court, Spraggins is entitled to absolute immunity from § 1983 liability for alleged acts which occurred while she was testifying as a witness in those adversarial hearings. As the Supreme Court has repeatedly made clear, in the § 1983 context, "a trial witness has absolute immunity with respect to *any* claim based on the witness' testimony." *Moffett v. Bryant*, 751 F.3d 323, 325 (5th Cir. 2014) (quoting *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012)). This is because "a witness' fear of retaliatory litigation may deprive the tribunal of critical evidence [and] ... the possibility of civil liability [is] not needed to deter false testimony at trial because other sanctions ... provide[ ] a sufficient deterrent." *Id.* at 325-26 (quoting *Rehberg*, 566 U.S. at 367). And the Fifth Circuit has explained that the "reason for

[23] In his response (Dkt. No. 51 at 1, 7) and in a separate motion to strike/redact (Dkt. No. 55), Plaintiff requests the Court redact any reference in Spraggins' documents to the minor children's names. The Court will **GRANT** Plaintiff's motion and instruct the Clerk of the Court below to redact the references to the minor children's names contained in Spraggins' motion (Dkt. No. 50 at 6, ¶ 16); the title page to the Appendix to Defendant Whitney Spraggins' Motion to Dismiss (Dkt. No. 50-1 at 1); the Declaration of Whitney Spraggins, ¶ 4 (Dkt. No. 50-1 at 4); and the caption of the docket in "*In the Matter of the Marriage of Kristen Marie Hansel and Brett Steven Hansel and In the Interest of. . . the Children*" (Cause No. 19-9035-211) (Dkt. No. 50-1 at 9).

granting absolute immunity to a witness against claims arising from testimony 'applies with equal force in both trial and [adversarial] pretrial settings.'" *Id.* (citation omitted).

Here, Spraggins' testimony at the two judicial hearings was adduced in the course of an adversarial proceeding. Accordingly, when Spraggins testified, she was testifying as a witness in an adversarial proceeding and is thus absolutely immune from § 1983 liability. *Id.*

In his response, Plaintiff asserts "[m]any jurisdictions have eroded this absolute immunity, particularly when it comes to professional malpractice or negligence in the preparation of testimony." Dkt. No. 51 at 3. According to Plaintiff, providing testimony that is not based on reliable data/methods or is intended to mislead the court can lead to a loss of immunity. *Id*. at 12. Plaintiff asserts Spraggins' "deliberate disregard for factual medical information in order to maintain her agreement in the conspiracy challenges her immunity as an expert witness, particularly when considering the evidence showing [Spraggins] was more of a 'Complicit Witness' instead of being an expert giving factual information based on accepted scientific knowledge." *Id.* at 6. Focusing on the May 2025 hearing in particular, Plaintiff argues Spraggins' second testimony was not offered as "expert testimony" but rather as a "Complicit Witness." *Id.* (further stating Spraggins "was only there to falsely report threats, defame [Plaintiff's] character to the court, remove/restrict [his] ability to oversee [his] sons' medical care, and deter [him] from filing a complaint with the appropriate agency"); *see also id*. at 7 (arguing Spraggins was a "Complicit Witness masquerading as an expert").

Despite Plaintiff's arguments to the contrary, it remains "well-settled" law that defendants who acted as witnesses under oath in adversarial proceedings are entitled to absolute immunity to § 1983 claims based on their testimony. *Chase v. Nix*, No. W-15-CV-258, 2016 WL 11668722, at *9 (W.D. Tex. May 25, 2016). Furthermore, absolute immunity applies even when a plaintiff

alleges perjured witness testimony. *Id.* at *8 (citing *Briscoe v. LaHue*, 460 U.S. 325, 335-36 (1983)). In a case from this district involving alleged violations of constitutional parental rights by the defendants' removal of the plaintiffs' children, the plaintiffs sought to recover monetary damages against Defendant Brown related to his testimony against the plaintiffs. *Bishop v. Ware*, No. 4:17-CV-00886-ALM-CAN, 2019 WL 2266637, at *3-*4 (E.D. Tex. Jan. 16, 2019), *report and recommendation adopted*, 2019 WL 1275336 (E.D. Tex. Mar. 20, 2019). Specifically, the plaintiffs asserted that Brown "deprived [the mother] of her rights to mother her children," when Brown "intentionally withheld from the court that the children were from Oklahoma and that they were of Native American de[s]cent," and "testified in court that [the mother's] rights as a mother were terminated based on [Plaintiffs' pending divorce]." *Id.* at *6. The court found that Brown was entitled to absolute witness immunity from § 1983 liability based on the plaintiffs' claims involving Brown's testimony at a court hearing related to the underlying custody matter. *Id.*

Similarly here, Plaintiff's claim for monetary relief against Spraggins for her testimony in a state court proceeding is not actionable under § 1983. *Spikes v. McMorris*, CV 17-17642, 2018 WL 1916880, at *2 (E.D. La. Jan. 26, 2018) ("In this lawsuit, plaintiff claims that the defendants committed perjury when testifying at his state criminal trial. However, such claims simply are not actionable under 42 U.S.C. § 1983."), *report and recommendation adopted*, 2018 WL 1912140 (E.D. La. Apr. 23, 2018); *see also Stem v. Ahearn*, 908 F.2d 1, 6 (5th Cir. 1990) (holding that a social worker's adverse judicial testimony offered at a child-custody hearing does not implicate due process concerns, instead "it constitutes witness testimony that is absolutely immune from section 1983 liability"). To the extent Plaintiff's claims are based upon Spraggins' testimony at the December 2024 and May 2025 court hearings related to the underlying custody matter, Spraggins

is entitled to absolute witness immunity against those § 1983 claims. *Bishop*, 2019 WL 2266637, at *6.

The undersigned recommends Spraggins' Rule 12(b)(1) motion be granted regarding Plaintiff's § 1983 claims pertaining to Spraggins' testimony during child custody hearings in December 2024 and May 2025, and that those claims be dismissed without prejudice based on absolute immunity.

### E. Plaintiff's claims pertaining to Spraggins' out-of-court actions should be dismissed under Rule 12(b)(6)

The only possible claims which remain are Spraggins' out-of-court actions allegedly made pursuant to a conspiracy to remove Plaintiff's children from his custody. *See Smith v. Texas Dep't of Child Protective Servs.*, No. CV H-18-3470, 2019 WL 3472867, at *7 (S.D. Tex. July 11, 2019), *report and recommendation adopted*, 2019 WL 3457677 (S.D. Tex. July 30, 2019). As explained below, Plaintiff's remaining claims against Spraggins should be dismissed pursuant to Rule 12(b)(6): (1) Plaintiff's conspiracy claims for Spraggins' out-of-court actions in 2020 are time-barred; and (2) Plaintiff's conspiracy claims for Spraggins' out-of-court actions in 2024-25 fail to state a claim because: (a) Plaintiff fails to sufficiently allege Spraggins was a state actor to support a plausible claim under § 1983; and (b) Plaintiff fails to sufficiently allege plausible claims under §§ 1985(3), 1986.

#### 1. Plaintiff's conspiracy claims for violations of his parental rights in 2020 are time-barred

To the extent Plaintiff asserts conspiracy claims for violations of his parental rights arising out of Spraggins' out-of-court actions prior to May 14, 2023[24] (i.e., any claims regarding the son's diagnosis of "Acute Pharyngitis" or Spraggins' interactions with DFPS employees in March 2020),

[24] As noted above, Plaintiff filed his original complaint on May 13, 2025. Dkt. No. 1.

those actions are barred by the statute of limitations and should be dismissed pursuant to Rule 12(b)(6). Even if those claims were not time-barred, those claims, along with any remaining conspiracy claims regarding Spraggins' out-of-court actions (i.e., 2024 through 2025 timeframe) should be dismissed for failure to state a claim because Plaintiff fails to sufficiently allege (or propose to allege) that Spraggins was a state actor.

### 2. Plaintiff's conspiracy claims for violations of his parental rights in 2024-25 fail to state a claim

#### a. Plaintiff fails to sufficiently allege K. Hansel was a state actor to support a plausible claim under § 1983

The only possible non-time-barred § 1983 claim remaining is Plaintiff's allegation that Spraggins conspired to violate his constitutional parental rights when she assisted in DFPS investigations in 2024-25. *See* Dkt. No. 48-1 at 4 (Plaintiff claiming Spraggins documented false information in agreement with the conspiracy and concealed this documentation from Plaintiff preventing him from parental oversight for the control of his sons' medical care). At issue is whether Spraggins, a private citizen, was acting "under color of state law." *Miller v. Allison*, No. 6:20CV194, 2020 WL 13754904, at *1 (E.D. Tex. June 5, 2020) (a plaintiff cannot sue a private citizen "not acting under color of state law for a federal civil rights violation."); *see also Hagerty v. Succession of Clement*, 749 F.2d 217, 221 (5th Cir. 1984) ("Section 1983 does not reach purely private conduct."). Spraggins persuasively asserts Plaintiff fails to allege sufficient facts to plausibly allege she acted under color of state law as a private medical provider not alleged to be employed or contracted by the state.

In his response, Plaintiff suggests two theories as to how Spraggins acted under color of state law: (1) Spraggins used "her official capacity" as a "medical provider under the oversight of a state agency" (Dkt. No. 51 at 2, 3); and (2) as a private actor, Spraggins was a willful participant

in joint activity with DFPS agent(s), specifically K. Hansel "who has consistently held color of law authority within DFPS, evidenced in the DFPS documentation."[25] *Id.* However, both theories fail.

Plaintiff's first theory fails because Plaintiff does not allege that Spraggins' conduct was "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State."). The Supreme Court has used at least four tests to determine whether private conduct is "fairly attributable to the State. . . ." *Doe v. United States*, 831 F.3d 309, 314 (5th Cir. 2016) (citing *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005)). The "public function test" examines whether the private entity performs a function which is "exclusively reserved to the State." *Cornish*, 402 F.3d at 550 (citation omitted). However, "[w]hile many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Bass v. Parkwood Hosp.*, 180 F.3d 234, 242 (5th Cir. 1999) (quoting *Flagg Bros. v. Brooks*, 436 U.S. 149, 158 (1978) (finding that "resolution of private disputes" was not a traditionally exclusive function of government)). Here, there is no argument that Spraggins' medical services are exclusively reserved to the state.

Under the "state compulsion test," a private actor's conduct is attributable to the state when it exerts coercive power over the private entity or provides significant encouragement. *Cornish*, 402 F.3d at 550-51 (citation omitted). However, the state's mere acquiescence in private conduct, even where authorized by statute, will not transform that conduct into state action. *Bass*, 180 F.3d at 242 (citation omitted). Again, Plaintiff does not attempt to show Spraggins' actions were compelled by the state.

[25] To the extent Plaintiff argues Spraggins "likely interacted with other DFPS agents that were at [Defendant's] office two separate times in 2020" (Dkt. No. 51 at 5), those claims are barred by the statute of limitations.

Under the "nexus" or "joint action" test, state action may be found where the government has "so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise." *Bass*, 180 F.3d at 242 (citation omitted). For example, in *Lugar*, the Supreme Court found state action based on a statute unconstitutionally authorizing the sheriff to attach a debtor's property on the basis of an ex-parte writ. *Id.* (citing *Lugar*, 102 S.Ct. at 2744). "[A] private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Id.* (quoting *Lugar*, 102 S.Ct. at 2756). There is no argument that DFPS and Spraggins' medical services are so interdependent to conclude it was a joint enterprise.

Under any formula, the inquiry into whether private conduct is fairly attributable to the state must be determined based on the circumstances of each case. *Id.* (citing *Lugar*, 102 S.Ct. at 2755). Answering that ultimate inquiry in *Bass*, the Fifth Circuit held that Parkwood hospital and a case management associate could not be held liable under § 1983. *Id.* at 243; *see also id.* at 242 (noting a private hospital is not transformed into a state actor merely by statutory regulation); *see also Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348–49 (5th Cir.1985) (finding no state involvement to support § 1983 action against private nursing home despite state regulation and public funding).

Here, Spraggins is alleged to be a family pediatrician employed as a family nurse practitioner at Preferred Pediatrics. Dkt. Nos. 48-1 at 4, 48-3 at 1. Plaintiff does not plead or propose to plead factual content that allows the Court to draw the reasonable inference that Spraggins' conduct as a private pediatric nurse practitioner employed at a private pediatrics clinic is "fairly attributable to the State."

Plaintiff's second theory—that Spraggins conspired with K. Hansel who held "color of law authority within DFPS"—fails as well. As held above, Plaintiff fails to sufficiently allege that K. Hansel acted under color of state law by virtue of her former employment with DFPS. As further noted above, Plaintiff has already amended his complaint once in response to a motion to dismiss, and the Court has considered herein the allegations contained in Plaintiff's proposed SAC and his responsive briefing, none of which would cure the deficiencies in the first amended complaint. Because Plaintiff fails to allege any state action, and because further amendment would be futile, any § 1983 conspiracy claims against Spraggins should be dismissed with prejudice.[26] *Barrera*, 2025 WL 3654178, at *3.

**b. Plaintiff fails to sufficiently allege plausible claims under §§ 1985(3), 1986**

Plaintiff's claims for conspiracy to deprive civil rights under 42 U.S.C. §§ 1985(3) and 1986 should also be dismissed. As held above, to state a cognizable claim under § 1985(3), Plaintiff must allege that a racial or class-based discriminatory animus lay behind the conspiracy. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 (5th Cir. 2001) (citation omitted). Plaintiff's conspiracy claim "plainly lacks the necessary element of invidious discrimination." *Id.* at 271. Plaintiff fails to allege (nor proposes to allege) any racial animus on the part of Spraggins, so his § 1985(3) claim fails. *Id.* And, any claim under § 1986 fails because it is dependent on a plaintiff's successful pleading of a § 1985 claim first. *Kerns*, 2025 WL 2946094, at *13. Plaintiff thus cannot establish a violation of 42 U.S.C. §§ 1985(3) or 1986.

[26] Because the undersigned finds Plaintiff fails to sufficiently allege state action, the undersigned does not address whether Plaintiff plausibly pleads Spraggins violated an underlying substantive constitutional or statutory right as further required to state a plausible claim under § 1983.

Because Plaintiff's FAC fails to plausibly state conspiracy claims under §§ 1985(3) and 1986, and because further amendment would be futile, the undersigned recommends the Court dismiss Plaintiff's §§ 1985(3) or 1986 claims against Spraggins with prejudice.[27]

**F. Spraggins' request for attorney's fees and costs**

Spraggins also seeks an award of attorney's fees and costs. Dkt. No. 50 at 20-21. As noted above, a prevailing defendant may be awarded fees where the plaintiff's action was "frivolous, unreasonable, or without foundation." *Alexander*, 753 F. App'x at 209. Spraggins argues Plaintiff's claims are frivolous because Plaintiff is aware that Spraggins is a private individual who was forced to testify and produce documents in the child custody case pursuant to subpoena. *Id.* at 20.

Although Spraggins will be a prevailing party if the Court adopts this Report and Recommendation, this case does not warrant an award of attorney's fees and costs, especially considering Plaintiff's *pro se* status and the complexities of the law. *Tannehill*, 2019 WL 847946, at *10. The undersigned simply does not find the claims entirely frivolous, unreasonable, or without foundation. Therefore, Spraggins' request for attorney's fees and costs should be denied.

## VII. RECOMMENDATION

Based on the foregoing, it is

**RECOMMENDED** that Defendants Department of Family and Protective Services, Green, Harris, and Hemby's Rule 12(b)(1) Motion to Dismiss (Dkt. No. 60) be **GRANTED**. Plaintiff's constitutional claims against DFPS and Green and Hemby in their official capacities are jurisdictionally barred by Eleventh Amendment immunity and should be **DISMISSED WITHOUT PREJUDICE** and without leave to amend. Plaintiff's request for leave to amend to

---

[27] Because the undersigned recommends dismissal of all of Plaintiff's claims against Spraggins, the undersigned will **DENY** Plaintiff's motion for referral to ADR/mediation (Dkt. No. 51-1). *See Wije v. United States*, No. 1:25-CV-1376-DAE, 2025 WL 3679765, at *4 (W.D. Tex. Dec. 18, 2025).

assert claims for injunctive relief against Green and Hemby in their official capacities should be denied as futile because those claims would be barred by Eleventh Amendment immunity and the *Younger* abstention doctrine. Plaintiff's request for leave to amend to assert claims for monetary damages against Green and Hemby in their individual capacities should be denied as futile because any proposed alleged constitutional violations lodged against Green and Hemby in their individual capacities would be dismissed based on qualified immunity. It is further

**RECOMMENDED** that Defendant Kristen Hansel's Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss (Dkt. No. 59) be **GRANTED IN PART and DENIED IN PART**. To the extent Plaintiff sues K. Hansel for actions taken in her official capacity as an employee of DFPS, such claims should be dismissed without prejudice under Rule 12(b)(1); any remaining official capacity claims against K. Hansel for actions taken outside her official capacity as an employee of DFPS should be dismissed with prejudice under Rule 12(b)(6) for failure to allege the essential elements for municipal liability under § 1983. Plaintiff's claims against K. Hansel in her individual capacity should not be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1); rather, they should be **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) as time-barred and/or for failure to state a claim. K. Hansel's request for attorney's fees and costs should also be denied. It is further

**RECOMMENDED** that Defendant Whitney Spraggins' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. No. 50) be **GRANTED IN PART and DENIED IN PART**. To the extent Plaintiff's claims are based upon Spraggins' testimony at the December 2024 and May 2025 court hearings related to the underlying custody matter, Spraggins is entitled to absolute witness immunity against those § 1983 claims, and those claims should be **DISMISSED WITHOUT PREJUDICE** pursuant to Rule 12(b)(1). Plaintiff's remaining claims against

Spraggins' for her out-of-court actions should be **DISMISSED WITH PREJUDICE** pursuant to Rule 12(b)(6) as time-barred and/or for failure to state a claim. Spraggins' request for attorney's fees and costs is denied.

Because the undersigned has recommended that Plaintiff's claims against the only remaining defendant, Lindsey Boone, be dismissed with prejudice (Dkt. No. 111), to the extent both Reports are adopted as the findings and conclusions of the Court, it is

**RECOMMENDED** that final judgment be entered dismissing Plaintiff's above-entitled and numbered cause of action **without prejudice** as to Plaintiff's claims against Defendants Department of Family and Protective Services, Davietta Green, Shila Hemby; any official capacity claims against K. Hansel for actions taken in her official capacity as an employee of DFPS; and any claims based upon Whitney Spraggins' testimony at the December 2024 and May 2025 court hearings related to the underlying custody matter, and **with prejudice** as to any remaining claims.

Objections

Within **fourteen (14) days** after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). Any response to the objections shall be filed within **seven (7) days** thereafter.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district

court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**ORDERED** that Plaintiff's responsive Motion Requesting ADR (Dkt. No. 51-2) is **DENIED**. It is further

**ORDERED** that Plaintiff's Motion to Strike – Requested Redactions in W. Spraggins's Motion to Dismiss (Dkt. No. 55) is **GRANTED**. The Clerk of the Court shall redact the references to the minor children's names contained in (1) Spraggins' motion (Dkt. No. 50 at 6, ¶ 16), (2) the title page to the Appendix to Defendant Whitney Spraggins' Motion to Dismiss (Dkt. No. 50-1 at 1); (3) Declaration of Whitney Spraggins, ¶ 4 (Dkt. No. 50-1 at 4); and (4) the caption of the docket in "*In the Matter of the Marriage of Kristen Marie Hansel and Brett Steven Hansel and In the Interest of. . . the Children*" (Cause No. 19-9035-211) (Dkt. No. 50-1 at 9). Finally, it is

**ORDERED** that Plaintiff's motions for leave to file amended complaint (Dkt. Nos. 72, 79) are **DENIED**, and Defendants' Motion to Strike Plaintiff's Second Amended Complaint (Dkt. No. 89) is **DENIED AS MOOT**.

## ***NOTICE TO PRO SE PLAINTIFF***

Mr. Hansel, this Report does not condone the seriousness of the allegations you raise. However, by and large, federal court is the wrong place for you to resolve these disputes. If you disagree, you can file objections as provided above. If you do, I encourage you to spend your time, energy, and page limits on the argument(s) you believe have the greatest chance to prevail.

SIGNED this the 2nd day of March, 2026.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE